James K. **GILSON, Appellant,**

v.

**REPUBLIC OF IRELAND, et
al., Appellees.**

No. 84–5489.

United States Court of Appeals,
District of Columbia Circuit.

Argues Sept. 18, 1985.
Decided April 11, 1986.

Marvin L. Szymkowicz, with whom Allan I. Mendelsohn and James K. Gilson were on the brief, for appellant.

Brandon T. Davis, a member of the Bar of the State of New York, pro hac vice, by special leave of court, with whom Robert B. Davidson was on the brief, for appellees Gaeltarra Eireann, Leictron Teoranta, and The Industrial Development Authority of Ireland.

William A. Bradford, Jr., with whom Janet E. Pitterle was on the brief, for appellee Republic of Ireland.

Before BORK, SCALIA, and FRIEDMAN,[*] Circuit Judges.

Opinion for the Court filed by Circuit Judge FRIEDMAN.

FRIEDMAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the District of Columbia granting summary judgment for the defendants and dismissing the two remaining counts of the complaint. 606 F.Supp. 38 (D.C.Cir.1984). Those counts charged the defendants with using the plaintiff Gilson's patent rights and misappropriating his trade secrets. The district court held (1) that as a non-exclusive licensee of the patent, the plaintiff had no standing to sue for infringement, (2) that the plaintiff had no trade secrets which could be misappropriated, (3) that the court did not have personal jurisdiction over two of the defendants, and (4) that those two defendants and a third were not acting as agents of the fourth defendant, liability against which was asserted solely on the theory of *respondeat superior*. We affirm

on narrower grounds than those of the district court.

## I

The case is here for the second time. In the first appeal, we upheld the district court's dismissal of four of the six counts of the complaint as barred by the statute of limitations. With respect to the remaining counts, counts 3 and 4, we concluded that "subject matter and personal jurisdiction may exist under the facts alleged, and accordingly we remand to the district court for further proceedings." *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1030 (D.C.Cir.1982).

The appellant Gilson is a joint inventor of a container (called an autoclave) for growing silicon crystals. Silicon crystals thus grown are cut, ground, polished, packaged, and subsequently utilized in a variety of electrical applications. The four inventors obtained a patent on the device, which they assigned to their employer, Western Electric Company, Inc. (Western Electric). Western Electric, in return, gave Gilson a non-exclusive royalty-free license under the patent.

The amended complaint in this case, filed in 1980, named as defendants the appellees Gaeltarra Eireann (Gaeltarra) and Industrial Development Authority of Ireland (Development Authority), both allegedly instrumentalities of the Irish government, Leictron Teoranta (Leictron), an Irish corporation now wholly owned by Gaeltarra, and the Republic of Ireland. The complaint alleged that Gaeltarra and Development Authority induced Gilson to enter into a business arrangement and move to Ireland to start a silicon crystal processing plant, that he was to provide the basic equipment and know-how and they were to provide funds to help the fledgling company, and that after Gilson moved to Ireland and transferred his equipment and know-

---

[*] Daniel M. Friedman, of the Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

how to the enterprise, he was forced out of the business.

In our previous opinion, we summarized counts 3 and 4 of the amended complaint as alleging that Gaeltarra,

> in contravention of U.S. and Irish law, and without plaintiff's consent—turned over to Leictron the use of patent rights and proprietary information owned by plaintiff, and that Leictron used and infringed these rights and information. Leictron is also accused of wrongfully converting and using equipment belonging to plaintiff, and of wrongfully manufacturing and selling quartz crystals with personnel trained by plaintiff. Defendant Leictron is said to have "benefitted from the continuing and substantial profits generated by its usurpation (with the active collusion of Defendant [Gaeltarra]) of the patent rights, proprietary information and equipment owned by Plaintiff."

682 F.2d at 1025–26 (footnote omitted).

We stated that the complaint further alleged that Development Authority,

> "acting alone and then jointly with Defendant [Gaeltarra], were agents of the Defendant Republic [of Ireland] at all times pertinent to this complaint," and that the acts by [Gaeltarra], [Development Authority], and [Leictron] of which plaintiff complains were performed "within the scope of [their] employment by Defendant Republic [of Ireland]."

*Id.* at 1024 (footnote omitted).

Following the remand we directed in the prior appeal, the parties conducted further discovery. The appellees then again moved for summary judgment. The district court granted the motion and dismissed counts 3 and 4.

The court held that Gilson did not have standing to sue for patent infringement since he was not the assignee or exclusive licensee of the patent. The court further held that Gilson had no claim for misappropriation of trade secrets because all of his alleged trade secrets were known in the industry. Alternatively, the court held that even if Gilson had trade secrets, his claims

against Leictron, Development Authority, and the Republic of Ireland had to be dismissed because the court lacked personal jurisdiction over them; the court ruled that Development Authority and Leictron had not done anything in the United States that would subject them to the court's jurisdiction, and that it lacked jurisdiction over the Republic of Ireland because the latter was not acting as a principal for the three other defendants. The district court finally held that the statute of limitations also barred any claims against the Republic of Ireland.

**II**

We first must consider whether we have jurisdiction over this appeal. Under the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 37, the Court of Appeals for the Federal Circuit has "exclusive jurisdiction ... of an appeal from a final decision of a district court ... if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title [Title 28]." 28 U.S.C. § 1295(a) (1982). Section 1338(a) of Title 28 provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents...." The determination whether the jurisdiction of the district court in this case "was based ... in part" on section 1338 thus depends upon whether the portions of Gilson's complaint relating to his patent rights arose under the patent laws.

In *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 35 S.Ct. 658, 59 L.Ed. 1056 (1915), the Supreme Court held that a case arose under the patent laws when the "essential features [of the bill] were the allegation of an infringement and prayers for an injunction, an account of profits and triple damages,—the characteristic forms of relief granted by the patent law." *Id.* at 481, 35 S.Ct. at 659, *cited with approval in Air Products and Chemicals v. Reichold Chemical*, 755 F.2d 1559, 1563, 225 USPQ 121, 124 (Fed.Cir.1985). Although the caption of the amended complaint states that it is one for, *inter alia*, "INFRINGEMENT OF PATENT RIGHTS," a careful reading

of the complaint shows that Gilson did not allege that the defendants had infringed Western Electric's patent but only that they had misappropriated his rights under his patent license. As Gilson explained in his brief, his suit "was not one for infringement of the patent but for *wrongful use* of the patent license."

The amended complaint asserts that under his agreement with the appellees, one of Gilson's obligations was to "utilize the Western Electric patent (for which [Gilson] had a royalty-free license) ... for effective development of synthetic quartz crystals" and "to provide ... patent rights," that as a result of the misconduct charged in the complaint Gaeltarra "secured extremely valuable patents," that the effect of that misconduct was the "usurpation of *his* patent ... rights" (emphasis added), that Gaeltarra thereafter turned over to Leictron the "use of [Gilson's] patent rights," and that "in derogation of [Gilson's] rights under the law ... Leictron used and infringed patent rights ... to which [Gilson] had exclusive rights."

Gilson's failure to allege that the defendant had infringed the patent, and limiting his claim to a charge of misappropriation of his rights under the license was not inadvertent. As Gilson stated in his brief regarding his failure to invoke the statutory provisions for infringement actions, "[t]he omission was intentional." Since a non-exclusive licensee cannot sue for infringement unless the license authorizes him to do so, which was not the situation here (see below), it is not surprising that Gilson eschewed a claim of patent infringement and instead filed what he described as "a common law action with a patent license as an element of its subject matter."

Gilson's claim that the defendants misappropriated his rights under the patent license sounds in tort, and therefore does not arise under the patent laws. The jurisdiction of the district court in this case accordingly was not "based, in whole or in part" on 28 U.S.C. § 1338. Instead, it was over a tort claim and was based on the Foreign Sovereign Immunities Act of 1976,

28 U.S.C. §§ 1330 and 1332(a)(2). Accordingly, this court and not the Court of Appeals for the Federal Circuit has jurisdiction over this appeal.

### III

The district court correctly held that Gilson had failed to state a valid claim under counts 3 and 4 for misappropriation of either patent rights or trade secrets. In view of this conclusion, it is unnecessary to consider the other grounds upon which the district court based its dismissal of those counts.

A. It is well settled that a non-exclusive licensee of a patent has only a personal and not a property interest in the patent and that this personal right cannot be assigned unless the patent owner authorizes the assignment or the license itself permits assignment. *See Lane & Bodley Co. v. Locke*, 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049 (1893); *Hapgood v. Hewitt*, 119 U.S. 226, 7 S.Ct. 193, 30 L.Ed. 369 (1886). *See also* A. Deller, *Deller's Walker on Patents* § 409 (2d ed. 1965).

Gilson does not contend that Western Electric, the owner of the patent, authorized him to assign his license or that the license, itself, permits assignment. Since Gilson did not submit the license agreement to the district court, we must decide the case on the assumption, which Gilson has not disputed, that he was not authorized to assign his rights under the license.

Since Gilson's non-exclusive right to practice the invention was personal to him, the alleged misappropriation of that right by the appellees could not and did not violate any legally protectable interest of Gilson. Under the license, all Gilson had was the right himself to practice the invention without violating any rights of the patent owner, Western Electric. *United States v. Studiengesellschaft Kohle, m.b.H.*, 670 F.2d 1122 (D.C.Cir.1981). Gilson could not have sued others for infringement because as a non-exclusive licensee he did not have that right and the patent owner had reserved the right to grant addi-

tional licenses. *Waterman v. Mackenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). After the alleged misappropriation by the appellees, Gilson still had the same right to practice the invention as before.

If the appellees practiced the patented invention, Western Electric, the owner of the patent, could have sued them for infringement, but it did not do so. The alleged use by the appellees of the patent may have violated their agreement with Gilson, but it did not constitute a misappropriation of Gilson's rights under the patent.

■ B. We have no basis for rejecting the district court's determination that Gilson had no trade secrets relating to the process for growing quartz crystals involved in this case.

The uncontroverted evidence showed that Gilson was one of nine or ten quartz crystal growers in the United States and that only four of those growers, including Gilson, were capable of independently developing a quartz-growing process. The evidence also showed that there were 75 cutters of quartz crystals and 100 quartz finishers worldwide. The defendants introduced an affidavit that the district court described as listing a "[s]ignificant number of books, journals, and other publications [which] disclose the processes in the manufacture of quartz crystals for which plaintiff seeks protection." It was on the basis of this evidence that the district court concluded that Gilson's processes were known. The court held that known processes could not be the subject of trade secret protection. *Rohm & Haas Co. v. Adco Chemical Co.*, 689 F.2d 424, 431 (3d Cir.1982).

On January 10, 1985, more than six months after the district court's decision and in conjunction with the filing of this appeal, the district court granted Gilson's motion to reopen the record and permitted him to file a document in which he stated that none of the sources cited in the defendants' affidavit revealed his quartz crystal technology. On the basis of this subsequent filing, Gilson now contends that the district court incorrectly held that he had no trade secrets.

■ "Materials not presented to the district court for consideration of a motion for summary judgment are never properly before the reviewing court on appeal from the judgment granting the motion." *Munoz v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada*, 563 F.2d 205, 209 (5th Cir. 1977) (citations omitted). *See also Marion County Coop. Ass'n v. Carnation Co.*, 214 F.2d 557 (8th Cir.1954). Gilson states that his document originally was sent to opposing counsel and to the court but "was, through inadvertence, not officially filed with the Clerk of the Court.... The circumstances surrounding the document are more fully explained in the motion." The record on appeal, however, does not contain Gilson's motion to reopen the record.

There is no indication in the record on appeal that the district court had Gilson's statement before it when it granted summary judgment. We review that ruling on the apparent record before the district court when it acted. On that basis we have no ground for rejecting the grant of summary judgment.

## IV

Since Gilson has not stated a valid claim for misappropriation of either his patent rights or his trade secrets or shown that there were disputed issues of material fact relating to those claims, the district court properly granted summary judgment dismissing counts 3 and 4 of the complaint against all the appellees. The judgment of the district court is

*Affirmed.*