The DOW CHEMICAL COMPANY, Plaintiff-Appellant,

v.

EXXON CORPORATION and Exxon Chemical Patents, Inc., Defendants/Cross Appellants.

Nos. 97–1347, 97–1351.

United States Court of Appeals, Federal Circuit.

March 24, 1998.

Harry J. Roper, Roper & Quigg, Chicago, IL, argued for the plaintiff-appellant. On the brief were Raymond N. Nimrod and Aaron A. Barlow. Also on the brief were Charles J. Kalil, The Dow Chemical Company, Midland, MI, and L. Wayne White, Freeport, TX.

Daniel Joseph, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, argued for the defendants/cross appellants. On the brief were Lisa S. Gallerano, John L. Hendricks, and Richard C. Levin, Dallas, TX. Also on the brief were Eric C. Woglom, Glenn A. Ousterhout, and Denise L. Loring, Fish & Neave, New York City, and William J. Wade and Frederick L. Cottrell, III, Richards, Layton & Finger P.A., Wilmington, DE. Of counsel were Scott R. Jacobs, Dallas, TX, and Richard J. Smith, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Austin, TX, and William J. McCabe, Fish & Neave, New York City.

Before MICHEL, LOURIE, and CLEVENGER, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Circuit Judge LOURIE dissents in part.

MICHEL, Circuit Judge.

Plaintiff–Appellant, The Dow Chemical Company ("Dow"), appeals from a final judgment of the United States District Court for the District of Delaware, entered on March 20, 1997, dismissing Dow's state law unfair competition claim against Exxon Corporation ("Exxon Corp.") because no justiciable issues remained in the case and denying Dow's claim for attorney fees pursuant to 35 U.S.C. § 285 because the requisite exceptional circumstances had not been shown to exist. *Dow Chem. Co. v. Exxon Corp.*, No. 94–572–SLR (D.Del. Mar. 20, 1997). Exxon Corp. and Exxon Chemical Patents, Inc. ("ECPI") (together, "Exxon") cross-appeal the district court's order entered on September 24, 1996, dismissing ECPI from the case due to ECPI not being found an indispensable party pursuant to Fed.R.Civ.P. 19(b). *Dow Chem. Co. v. Exxon Chem. Patents, Inc.*, No. 94–572–SLR (D.Del. Sept. 24, 1996). Both Dow's appeal and Exxon's cross-appeal were timely filed and this case was submitted for our decision following oral argument on January 6, 1998.

Because Dow's state law unfair competition claim was not coterminous with a claim of inequitable conduct and was not otherwise preempted by the federal patent laws, we reverse the district court's dismissal of that claim and remand for further proceedings. However, because the district court did not commit clear error in finding that there were no exceptional circumstances, we affirm the district court's judgment to the extent it denied Dow an award of attorney fees. In addition, because ECPI was properly found not to be an indispensable party, we affirm the district court's dismissal of ECPI from the case.

## BACKGROUND

U.S. Patent No. 5,246,783 (the "'783 patent") was issued to Lawrence Spenadel, Monica L. Hendewerk and Aspy K. Mehta on September 21, 1993, and assigned to ECPI. ECPI, a Delaware corporation, is a wholly owned subsidiary of Exxon Corp., a New Jersey corporation with its principal place of business in Texas. ECPI's '783 patent discloses certain wire and cable devices manufactured using a particular insulating polymer. Such devices are commonly used to transmit electrical power to residential and business consumers. Exxon Corp. manufactures the polymer used in the patented devices under the trade names VISTALON and EXACT. At about the same time the '783 patent was issued, Dow, a Delaware corporation with its principal place of business in Michigan, introduced its first line of "ITP" polymer products under the trade name AFFINITY. By February 1994, Dow had introduced a second line of ITP products, known as ENGAGE, with two polymers specifically for cable use. By June 1994, Dow had also developed a third ENGAGE product designed for cable and wire use. Subsequently, Dow introduced further ENGAGE products as well as a line of polymers, the Nordel IP polymers, for use in wire and cable devices.

On October 25, 1994, Dow filed an action against Exxon in the United States District Court for the District of Delaware. The complaint consisted of two counts. Count I

was for a declaratory judgment that certain polymers made by Dow for wires and cables did not infringe the '783 patent. This count also contained an allegation that the '783 patent was invalid and unenforceable. Count II was a state law claim for unfair competition based upon alleged threats by Exxon, made in meetings and by letter, to sue prospective and actual Dow ENGAGE customers for infringement of the '783 patent. Count II was later amended to allege that Exxon had no good faith belief that Dow infringed the patent when Exxon made those threats. In a second amendment to Count II, Dow alleged that Exxon obtained the '783 patent by inequitable conduct before the Patent and Trademark Office (the "PTO"). The alleged inequitable conduct was that Exxon claimed its polymers were superior in various electrical tests to the prior art while withholding its knowledge of a group of polymers, sold by Mitsui Petrochemical Industries, Ltd. under the trade name TAFMER, which reputedly could achieve the same or better results than the Exxon polymers and which allegedly anticipated the claims in the '783 patent.

On August 5, 1996, Exxon filed a "Statement of Non–Liability" with the district court which gave Dow and its customers, at no cost, perpetual immunity from suit for infringement of the '783 patent. As a result of the filing of this Statement of Non–Liability, the district court dismissed Count I of Dow's complaint in an Order entered on September 24, 1996. *Dow Chem. Co. v. Exxon Chem. Patents, Inc.*, No. 94–572–SLR (D.Del. Sept. 24, 1996). This same Order also dismissed ECPI from the litigation.

The district court did not deem ECPI an "indispensable" party to the action pursuant to Fed.R.Civ.P. 19(b) because, "as a practical matter, Exxon [Corp.] has both the duty and the capability of protecting ECPI's interests. Joinder, therefore, is not required." *Dow*, slip op. at 12 (D.Del. Sept. 24, 1996) (footnote omitted).

After further briefing, the district court held in a Memorandum Order entered November 26, 1996, that Dow would not be permitted to present evidence of Exxon's alleged inequitable conduct in connection with its remaining state law unfair competition claim.[1] *Dow*, slip op. at 6–7 (D.Del. Nov. 26, 1996). The district court posited that "[t]he question for the court, then, is whether issues of patent validity, and specifically of Exxon's alleged inequitable conduct, may be decided in the context of a business tort claim where all claims arising directly under the patent laws have been dismissed." *Id.* at 3–4. The court explained that its decision to exclude evidence of inequitable conduct relied upon precedent indicating that a court should not reach beyond the scope of a given controversy to invalidate a patent. *Id.* at 5 (citing *Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575, 37 USPQ2d 1626, 1631 (Fed.Cir.1996); *Vieau v. Japax, Inc.*, 823 F.2d 1510, 1517–20, 3 USPQ2d 1094, 1100–02 (Fed.Cir.1987)). Thus, the district court "decline[d] to allow what in essence is a patent trial to proceed in the guise of a business tort trial." *Id.* at 6. In addition, the district court further declared that the presumptive validity attaching to patents meant that "a patent owner who exercises the right to exclude others

1. The district court declined to determine which state's law would apply and instead relied upon the standard set forth for a common law claim of intentional interference with contractual relations in *Restatement (Second) of Torts* §§ 766, 766B (1979). For purposes of deciding the federal preemption issue in this appeal, we accept the district court's definition of the elements of the common law claim. The *Restatement* recites with regard to the tort of intentional interference with the performance of a contract:

> One who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the

other from the failure of the third person to perform the contract.

*Id.* § 766. With regard to intentional interference with prospective contractual relations, it provides:

> One who intentionally and improperly interferes with another's prospective contractual relation ... is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
> (b) preventing the other from acquiring or continuing the prospective relation.

*Id.* § 766B.

from using the invention is presumed to be acting in good faith, even if the patent is later deemed invalid or unenforceable." *Id.* (citing *Concrete Unlimited, Inc. v. Cement-craft, Inc.*, 776 F.2d 1537, 1539, 227 USPQ 784, 785 (Fed.Cir.1985)). Hence, the court reasoned:

> [the patentee in *Concrete Unlimited* ] 'had the right to exclude others from making, using, and selling the invention and to enforce those rights *until the . . . patent was held invalid.*' This proposition appears to apply even where, as in *Concrete Unlimited,* the plaintiff alleges that the patent was obtained by inequitable conduct. Thus, it appears that an unfair competition claim based solely on the defendant's assertion of patent rights allegedly obtained through inequitable conduct could not, as a matter of law, succeed.

*Id.* at 6 (alteration in original) (citation omitted). Consequently, because "Dow . . . conceded that inequitable conduct before the PTO is the sole basis for its [unfair competition] claim" the court concluded that no triable issues remained and dismissed the case in its entirety in an order entered on March 20, 1997. *Dow,* slip op. at 2 (D.Del. Mar. 20, 1997).

In its accompanying Memorandum Order, the district court also denied Dow's claim for attorney fees under 35 U.S.C. § 285. *Id.* The court held that Dow was not the prevailing party in Count II and that, because there were not exceptional circumstances warranting an award of attorney fees, it was unnecessary to determine whether Dow was the prevailing party in Count I. *Id.*

On appeal, Dow argues that the district court should have adjudicated its state law claim for unfair competition and so erred by dismissing Count II merely because the claim implicated the issue of inequitable conduct. Dow also contends that it was the prevailing party in Count I and that this court should remand the issue of whether there were exceptional circumstances to the district court with instructions to consider Exxon's alleged inequitable conduct in its determination. Exxon cross-appeals, arguing that, even if this court finds that the district court should have adjudicated the unfair competition claim, the district court still should have dismissed the case because

ECPI was an indispensable party whose joinder would destroy diversity.

## ANALYSIS

### I.

■ The principal problem presented to the court is whether state courts, or federal courts adjudicating state law claims, may hear a state law tort claim for intentional interference with actual and prospective contractual relations that implicates the patent law issue of inequitable conduct or, alternatively, whether such a claim is preempted by the federal patent law. We hold that such a state law tort claim is not preempted by the federal patent law, even if it requires the state court to adjudicate a question of federal patent law, provided the state law cause of action includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law.

■ Article I, Section 8, Clause 8, of the United States Constitution grants Congress the power "[t]o promote the Progress of Science and Useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." Under this authority, Congress enacted the federal Patent Act, 35 U.S.C. §§ 1–376 (1994). Pursuant to the Supremacy Clause, U.S. Const. art. VI, cl. 2, state causes of action are preempted if they stand "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting a statute. *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

The Supreme Court has provided substantial guidance as to what constitutes such an impermissible "obstacle" to the accomplishment and execution of the patent laws. In *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), two cases decided on the same day, the Supreme Court held that state law unfair competition statutes that prohibited (on passing-off grounds) the sale of lamps that were

confusingly similar to unpatentable lamps already in the marketplace were unconstitutional under the Supremacy Clause. As the *Sears, Roebuck* Court explained:

> To allow a State by use of its law of unfair competition to prevent the copying of an article which represents too slight an advance to be patented would be to permit the State to block off from the public something which federal law has said belongs to the public. The result would be that ... States could allow perpetual protection to articles too lacking in novelty to merit any patent at all under federal constitutional standards. This would be too great an encroachment on the federal patent system to be tolerated.

376 U.S. at 231–32, 84 S.Ct. at 788–89. However, the Court also made clear that state law remedies for wrongs involving patented or patentable products were not altogether precluded. As the Court declared:

> Doubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods.

*Id.* at 232, 84 S.Ct. at 789.

Further instruction on the constitutional limits on state law remedies was provided by *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). In *Kewanee*, the Supreme Court held that Ohio's law of trade secrets, which, *inter alia*, granted monopoly protection to processes and manufacturing techniques that had been in commercial use for over one year but were otherwise patentable, was not preempted by the federal Patent Act. *See id.* at 474, 94 S.Ct. at 1882–83. The Court's analysis of the permissible reach of state regulation focused on whether the Ohio statute " 'clashes with the objectives of the federal patent laws.' " *Id.* at 480, 94 S.Ct. at 1885 (quoting *Sears, Roebuck,* 376 U.S. at 231, 84 S.Ct. at 788–89). These objectives the *Kewanee* Court found to be threefold: providing an incentive to invent, promoting the full disclosure of inven-

tions, and ensuring that "that which is in the public domain cannot be removed therefrom by action of the States." *Id.* at 480–81, 94 S.Ct. at 1885–86. The Court concluded that the Ohio trade secrets statute did not offend the first and third of these objectives and, while it did not promote full disclosure of inventions, the Court reasoned that its effect would be minimal given that few inventors with patentable subject matter would opt for the relatively weak protections of the trade secrets statute. *See id.* at 483–91, 94 S.Ct. at 1887–91. Thus, the Ohio trade secrets statute was held not to be preempted by federal patent law. *See id.* at 493, 94 S.Ct. at 1891–92.

The Supreme Court applied the same three-factor test in *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979). In *Aronson*, although the licensor's patent application was rejected, the Court explained that enforcement of royalty agreements on intellectual property under state contract law was not preempted regardless of whether that intellectual property consisted of patentable subject matter. *See id.* at 262, 99 S.Ct. at 1099. As the Court reasoned, "[c]ommercial agreements traditionally are the domain of state law. State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable; the states are free to regulate the use of such intellectual property in any manner not inconsistent with federal law." *Id.*

Finally, in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989), the Supreme Court reviewed a Florida statute prohibiting the use of a "direct molding process" to recreate the boat hull designs of others and creating a civil cause of action against anyone who knowingly sold a hull so duplicated. *Id.* at 144–45, 109 S.Ct. at 974–75. The Court reiterated its holdings in *Sears, Roebuck* and *Kewanee,* pointing out that in those cases, "state protection was not aimed exclusively at the promotion of invention itself, and the state restrictions on the use of unpatented ideas were limited to those necessary to promote goals outside the contemplation of the federal patent scheme." *Id.* at 166, 109 S.Ct.

at 985.[2] Thus, because the "Florida statute [was] aimed directly at the promotion of intellectual creation by substantially restricting the public's ability to exploit ideas that the patent system mandates shall be free for all to use," the Supreme Court struck down the statute as preempted by the federal patent laws. *Id.* at 167, 109 S.Ct. at 986.

Under the standard mandated by the Supreme Court, the state law cause of action at issue here does not present an "obstacle" to the execution and accomplishment of the patent laws.[3] None of the three factors identified in *Kewanee* are implicated by a state tort remedy for intentional interference with actual and prospective contractual relations in instances where the tortfeasor's threats to sue were based upon infringement of a patent obtained by inequitable conduct. It is difficult to fathom how such a state law cause of action could have any discernible effect on the incentive to invent, the full disclosure of ideas, or the principle that ideas in the public domain remain in the public domain. Indeed, it seems most improbable that an inventor would choose to forfeit the benefits of patent protection because of fear of the risk of being found tortiously liable based upon attempting to enforce a patent obtained by inequitable conduct. Moreover, a key purpose behind this tort is the protection of the integrity of commercial contracts which, as noted above, "traditionally are the domain of state law." *Aronson,* 440 U.S. at 262, 99 S.Ct. at 1099; *see generally,* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 978 (1984) ("The law of interference with contract is thus one part of a larger

body of tort law aimed at protection of relationships, some economic and some personal." (footnotes omitted)). The tort plainly does not seek to offer patent-like protection to intellectual property inconsistent with the federal scheme.

 While it is true that, under the facts of this case, the "state court" would be required to make a determination of an issue of patent law in reaching its judgment on the underlying tort, this determination would only be ancillary to its central purpose.[4] In any case, it is well established that a state court has authority to adjudicate patent questions so long as the action itself does not arise under the patent laws. *See, e.g., Hathorn v. Lovorn,* 457 U.S. 255, 266 n. 18, 102 S.Ct. 2421, 2429 n. 18, 72 L.Ed.2d 824 (1982) ("We frequently permit state courts to decide 'collaterally' issues that would be reserved for the federal courts if the cause of action arose directly under federal law. For example, the state courts may decide a variety of questions involving the federal patent laws."); *Jacobs Wind Elec. Co. v. Florida Dep't of Transp.,* 919 F.2d 726, 728, 16 USPQ2d 1972, 1974 (Fed.Cir.1990) ("[A]lthough a state court is without power to invalidate an issued patent, there is no limitation on the ability of a state court to decide the question of validity when properly raised in a state court proceeding."); *Intermedics Infusaid, Inc. v. Regents of the Univ. of Minn.,* 804 F.2d 129, 132–33, 231 USPQ 653, 656 (Fed.Cir.1986) ("[T]here are no policies reflected in acts of Congress which require that the federal courts enjoin … a state court contract suit

**2.** Of course, as noted earlier, preemption was found in *Sears, Roebuck.*

**3.** Based upon the record from the district court we assume that the state law cause of action presented here is identical to that described by *Restatement (Second) of Torts* §§ 766, 766B (1979), for intentional interference with actual and prospective contractual relations. *See supra* note 1.

**4.** However, we note that the "state court" would be required to make its inequitable conduct determination in accordance with federal law. We further note that the evidentiary and discretionary requirements necessary for a finding of inequitable conduct are stringent. Indeed, it is necessary to prove with clear and convincing evidence both materiality and an intent to deceive. *See Kingsdown Med. Consul-*

*tants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988). Even upon such a threshold showing, "the ultimate question of whether inequitable conduct occurred is equitable in nature" and the trial court must use its sound discretion to determine whether, based upon the relative degrees to which the materiality and intent exceed the threshold, a finding of inequitable conduct is warranted under the unique circumstances of that case. *Id.* at 876. The cautious exercise of that discretion is imperative given that a finding of inequitable conduct has the drastic effect of rendering the entire patent unenforceable. *Id.* at 877. We need not address what preclusive effect, if any, such a state court determination would have on subsequent federal litigation.

seeking royalties payable under a patent license wherein the state court is or could be asked by the defendant to rule on the validity of the patent."). This analysis remains unchanged regardless of whether the state law claim is grounded in contract or tort. *See, e.g., American Well Works v. Layne & Bowler Co.,* 241 U.S. 257, 259, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (suit for libel or slander based upon an allegation of infringement sounded in tort and did not arise under the patent laws); *Gilson v. Republic of Ir.,* 787 F.2d 655, 657–58, 229 USPQ 460, 462 (D.C.Cir.1986) (claim for misappropriation of rights under a patent license sounded in tort and did not arise under the patent laws).

The case chiefly relied upon by the district court for its holding that "it appears that an unfair competition claim based solely on the defendant's assertion of patent rights allegedly obtained through inequitable conduct could not, as a matter of law, succeed" was *Concrete Unlimited v. Cementcraft, Inc.,* 776 F.2d 1537, 227 USPQ 784 (Fed.Cir.1985).[5] *Dow,* slip op. at 6 (D.Del. Nov. 26, 1996). It is worth noting that Exxon quite pointedly avoided basing its argument for affirmance on this case. In *Concrete Unlimited,* this court reversed the district court's judgment of "unfair competition by taking business away from the Defendant by threats and infringement actions based on the fraudulently obtained patent." *Concrete Unlimited,* 776 F.2d at 1539, 227 USPQ at 785 (internal quotation marks omitted). This court held that the patent-holder had the right to enforce its patent until the patent was found invalid and that such enforcement did not constitute unfair competition. *See id.* Significantly, the district court had held that the

patent-holder had *not* engaged in inequitable conduct (although the patent was held to be invalid for obviousness) and this ruling was not disturbed by this court. *See id.* at 1538, 776 F.2d 1537, 227 USPQ at 785; *Concrete Unlimited, Inc. v. Cementcraft, Inc.,* No. 81–6083–CIV–GONZALEZ, slip op. at 2 (S.D.Fla. Jan. 3, 1985). Thus, in *Concrete Unlimited,* the good faith enforcement of a patent was held not to constitute unfair competition. The instant case, however, concerns an allegation of bad faith enforcement of a reputedly unenforceable patent. Unlike *Concrete Unlimited,* the tortfeasor here allegedly knew that its patent was unenforceable when it engaged in market misconduct. Indeed, without such knowledge there would be no actionable wrong.[6] Consequently, we do not read *Concrete Unlimited* to suggest that a claim of unfair competition predicated in part on inequitable conduct could not, as a matter of law, succeed and, in any case, we do not agree with the district court that this particular state law cause of action turned "solely" on inequitable conduct.

Nor do we agree with Exxon that the disputed cause of action is an impermissible alternative state law remedy for inequitable conduct before the PTO as prohibited by *Abbott Laboratories v. Brennan,* 952 F.2d 1346, 21 USPQ2d 1192 (Fed.Cir.1991). In *Abbott Laboratories,* we held that a state tort action for abuse of process could not "be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office." *Id.* at 1355, 21 USPQ2d at 1200. Such a tort claim "would be an inappropriate collateral intrusion on the regulatory procedures of the PTO

---

5. The other two cases relied upon by the district court are of less significance. The court relied upon *Vieau v. Japax, Inc.,* 823 F.2d 1510, 1517–20, 3 USPQ2d 1094, 1100–02 (Fed.Cir.1987), for the proposition that a court should not reach beyond the scope of a given controversy to invalidate a patent. *Dow,* slip op. at 5 (D.Del. Nov. 26, 1996). However, *Vieau* did not concern any causes of action under state law. The other case relied upon by the district court was *Pro–Mold and Tool Co. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568, 37 USPQ2d 1626 (Fed.Cir.1996). *Pro–Mold* held that enforcing a patent obtained by inequitable conduct did not constitute unfair competition for purposes of section 43(a) of the Lanham Act. *See id.* at 1575, 75 F.3d 1568, 37 USPQ2d at 1631. However, *Pro–Mold* offers no

guidance as to the effect of inequitable conduct on state law causes of action for intentional interference with contractual relations.

6. We note that, to survive a motion a motion for summary judgment, more than a mere allegation of knowledge of the patent's unenforceability would be required. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

... and is contrary to Congress' preemptive regulation in the area of patent law." *Id.* at 1357, 21 USPQ2d at 1201 (citation omitted). However unlike the common law abuse of process claim at issue in *Abbott*, the tort claim asserted here for intentional interference with actual and prospective contractual relations is not an alternative or additional remedy for inequitable conduct before the PTO. In *Abbott*, the abuse of process claim at issue was based entirely upon bad faith misconduct before the PTO. Indeed, the wrong alleged and for which state law tort damages were sought was no more than bad faith misconduct before the PTO. However, the tort claim at issue here is not premised upon bad faith misconduct in the PTO, but rather is premised upon bad faith misconduct in the marketplace. Unlike the abuse of process claim in dispute in *Abbott*, a tort claim for intentional interference with contractual relations requires elements entirely different to those required for inequitable conduct before the PTO. Thus, for example, it requires that the tortfeasor have knowledge of the contractual relationship with which he is interfering and that he commit an act of intentional inducement to harm that relationship. *See Restatement (Second) of Torts* § 766, cmts. h, i. These required elements take place in the marketplace, not before the PTO. Indeed, the tort can be made out without there being any misconduct whatsoever in the PTO. Thus, for example, a holder of a valid and enforceable patent who knowingly brings baseless infringement actions against a competitor's customers might also be subject to such tort liability. Accordingly, because it requires entirely different elements to establish a prima facie state tort action for intentional interference with contractual relations, it plainly is not a preempted alternative or additional state law remedy for inequitable conduct. Rather it is a long-established independent tort remedy for improprieties in the marketplace.

Moreover, any notion that *Abbott* suggested that state tort remedies for intentional interference with contractual relations are preempted by the federal patent laws must surely be dispelled by the fact that in *Abbott* the appellant also brought a counterclaim for intentional interference with contractual relations. On appeal, this court upheld the trial court's decision not to grant a new trial because of the alleged inadequacies in the jury instructions regarding causation. *Abbott*, 952 F.2d at 1353, 21 USPQ2d at 1198. Despite the question of preemption being squarely at issue with regard to the abuse of process claim, neither the cross-appellant nor this court sought to suggest that such a cause of action was preempted. Consequently, we simply do not see how *Abbott* can be read to suggest that the tort of intentional interference with contractual relations is preempted by the federal patent laws.

The dissent suggests that the state tort of interference with contractual relations is based essentially on an assertion of inequitable conduct and amounts to little more than an attempt to use state law to derive a damages remedy for inequitable conduct. Although acknowledging that the tort has additional elements, the dissent posits that to focus on such differences "merely masks the real issue." In our judgment, however, these different elements are the primary issue. The tort occurs not in the PTO, but later in the marketplace.

A state has every right to protect its citizens and residents in their contractual relations from acts of wrongful interference inside its borders by any party, including a patentee. Moreover, as noted earlier, the Supreme Court has recognized that the protection of commercial, contractual relations is primarily the concern of state law. Any award of damages, then, would be based on local conduct that the state has a right to regulate; proof of acts before the PTO in such a trial are merely evidence of a patentee's bad faith in its subsequent contacts with customers.

Bad faith in turn is only one of three elements that must be established to make out the tort. As noted earlier, the other two are the interfering communications themselves and the disruption and damages therefrom. Nor does the tort simply duplicate federal remedies under patent law as urged by the dissent. The remedy available for proven inequitable conduct is a holding of unenforceability of the patent in federal court; the remedy at law for tortious interference is money damages in state court.

Thus, the wrongful acts, the remedies and the forum are all different. In short, we cannot agree with the dissent's characterization of the tort asserted here as based essentially on an assertion of inequitable conduct. Rather, we see the tort as based essentially on bad faith communications that interfere with contractual relations. It is true, however, that in this case without the alleged inequitable conduct before the PTO there would likely be inadequate proof of bad faith. Nevertheless, that the source of proof of bad faith, just one element of the tort, was purported inequitable conduct before the PTO, does not make this tort a patent issue preempted by federal law.

The dissent further suggests that it is undesirable for inequitable conduct to be addressed during trial of a state law cause of action. However, that cannot trump the right of the state to consider inequitable conduct as evidence of wrongful intent in a tort case, any more than it would preclude the state court from addressing the validity of a patent in a contract case. We simply do not see how the "bright line rule" desired by the dissent is either plain in application or possible under our federal patent system and settled case law.

Any argument that this state law cause of action provides a duplication of federal remedies that could lead to conflicting results is similarly unfounded. The tort of intentional interference with contractual relations is a remedy of money damages for improper behavior by competitors in the marketplace. The tort at issue covers all types of commercial actors and does not single out patent-holders for either increased deference or additional scrutiny. Inequitable conduct, however, provides a defense to those accused by a patent-holder whose patent was obtained by improper conduct in the PTO and provides the specific relief of making the patent unenforceable. Far from being a duplication of remedies, the state tort and the federal defense address entirely different wrongs and also provide different forms of relief. In

addition, given that, as discussed earlier, it is well-established that issues of validity and enforceability may be adjudicated in licensing disputes governed by state law and thus yield conflicting results, it seems somewhat unpersuasive to suggest that the possibility of conflicting results raised by this case is an adequate ground for preemption.

Finally, we do not agree with the suggestion that by allowing Dow to litigate its claim for intentional interference with contractual relations we would be creating a new cause of action. The tort of intentional interference with actual and prospective contractual relations is a cause of action that has ancient origins. Prosser and Keeton trace its development from the right of the *pater-familias* in early Roman law to bring an action for any harm done to his family, slaves or other members of his establishment through to the Ordinance of Labourers enacted in England in 1349 which gave employers a cause of action against those who employed their runaway servants.[7] *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 979–80 (1984). Although American courts were at first reluctant to recognize the tort, "the tort is now recognized virtually everywhere as to any contract, regardless of its character." *Id.* at 981. As we have recognized with regard to licensing agreements, it is generally state law, not federal patent law, that governs contractual disputes even when patent issues must be adjudicated because patents are involved in the subject matter of those contracts. Similarly here, state law governs the maintenance of orderly contractual relations and this function is not preempted merely because patents and patent issues are presented in the substance of those contracts. Thus, far from creating a new cause of action, we are merely not intervening to restrict a well-established state cause of action.

Accordingly, because the cause of action alleged by Dow for intentional interference with prospective and actual contractual rela-

---

7. *See also Restatement (Second) of Torts* § 766B, cmt. b (1979) ("As early as 1621 the court of King's Bench held one liable to another in an action on the case for interfering with his prospective contracts by threatening to 'mayhem and vex with suits' those who worked for or

bought for him, 'whereby they durst not work or buy.' ... [I]n 1410 it was said that 'if the comers to my market are disturbed or beaten, by which I lose my toll, I shall have a good action of trespass on the case.' ").

tions does not stand as an impermissible obstacle to the accomplishment and execution of the patent laws and because the cause of action requires entirely different elements from the defense of inequitable conduct under the federal patent laws, we must reverse the judgment of the district court.

## II.

Dow's contention on appeal that the district court erred with regard to attorney fees is less persuasive. Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Based upon the record on appeal, the district court's determination that no exceptional circumstances had been shown in this case was not clearly erroneous. *See Revlon, Inc. v. Carson Prods. Co.*, 803 F.2d 676, 679, 231 USPQ 472, 474 (Fed.Cir.1986). Consequently, like the district court, we do not reach the issue of whether Dow was the prevailing party and we affirm the district court's judgment on the issue of attorney fees.

## III.

█ We also find no merit in Exxon's cross-appeal. Exxon argues that the district court erred when it held that ECPI was not an indispensable party which had to be joined to Count II pursuant to Fed.R.Civ.P. 19. The district court appropriately inquired "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b). We agree with the district court that joinder was not required because, "as a practical matter, Exxon [Corp.] has both the duty and the capability of protecting ECPI's interests." *Dow,* slip op. at 12 (D.Del. Sept. 24, 1996). *See In re Allustiarte,* 786 F.2d 910, 919 (9th Cir.1986) ("Joinder is not required when the absent parties' interests are adequately protected by those who are present."). Although ECPI remains the owner of the '783 patent, it has granted certain significant rights in the patent to Exxon Chemical Company ("ECC"), an unincorporated division of Exxon Corp. These rights include the right to sue for infringement of the patent, the right to defend ECPI in litigation concerning the pat-

ent, and the right to sublicense the patent without notifying ECPI. *Dow,* slip op. at 10 (D.Del. Sept. 24, 1996). Therefore, given ECC's substantial rights in the '783 patent and Exxon Corp.'s vigorous defense of the '783 patent in this litigation, we agree with the district court that joinder of ECPI was not required.

## CONCLUSION

Because Dow's state law unfair competition claim against Exxon Corp. was neither preempted by the federal patent laws nor coterminous with a claim under the patent laws, we reverse that part of the district court's judgment and remand for further proceedings in accordance with this opinion. However, because the district court properly found there to be no exceptional circumstances permitting an award of attorney fees and that ECPI was not an indispensable party requiring joinder, we affirm those parts of the district court's judgment. Accordingly, the district court's judgment is

*AFFIRMED–IN–PART, REVERSED–IN–PART,* and *REMANDED.*

## COSTS

Each party to bear its own costs.

LOURIE, Circuit Judge, dissenting in part.

I respectfully dissent from Part I of the court's decision reversing the district court's dismissal of the state law claim. However, I do join Parts II and III which affirm, respectively, the district court's denial of Dow's request for attorney fees and the court's dismissal of Exxon Chemical Patents, Inc. from the case.

I dissent because the district court correctly decided that the state law claim was preempted by federal law; it was essentially an inequitable conduct claim. The majority, citing *Sears, Roebuck & Co. v. Stiffel,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, 140 USPQ 524 (1964), *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669, 140 USPQ 528 (1964), *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315, 181 USPQ

673 (1974), *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296, 201 USPQ 1 (1979), and *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118, 9 USPQ2d 1847 (1989), concludes that the state law claim for intentional interference with actual and prospective contractual relations does not stand as an impermissible obstacle to the accomplishment and execution of the patent laws and that it is therefore not preempted.

However, none of these Supreme Court cases deals with the issue before us, which is whether such a state law claim may be entertained when it is essentially bottomed on the assertion that the patentee engaged in inequitable conduct in the Patent and Trademark Office ("PTO"). The cases cited by the majority involved either an alternative form of intellectual property protection or enforcement of a contract, rather than an attack on the enforceability (or validity) of a patent which is basically at issue here.

*Kewanee* concerned trade secret protection, and the Supreme Court concluded that the patent law does not preclude inventors from employing state trade secret laws for their protection rather than seeking to patent their inventions. *See* 416 U.S. at 479, 94 S.Ct. at 1885. In *Sears, Roebuck* and *Compco*, the question was whether state unfair competition law can provide patent-like protection against copying, when federal patent law did not protect the subject matter in question. The court held in the negative. The issue was quite different from ours.

*Aronson* involved enforcement of a contract that provided for a right to royalties, whether or not a patent had issued. No preemption was found because enforcement of the contract did not conflict with the goals and policies of federal patent law. *See Aronson*, 440 U.S. at 265–66, 99 S.Ct. at 1100–01. That case had little to do with this one. In *Bonito Boats*, the Court found preemption because the Florida statute creating patent-like protection for boat hull designs directly conflicted with federal law. The Court held that state laws which restrict public access to subject matter specifically left unprotected by the federal patent law are preempted.

Thus, none of those cases provides precedent for the majority's decision. I believe this court's holding of preemption in *Abbott Laboratories v. Brennan* is the closest precedent and that it should lead to a similar result here. *See* 952 F.2d 1346, 1355–57, 21 USPQ2d 1192, 1199–1201 (Fed.Cir.1991) (holding that a state law claim for abuse of process, bottomed on the allegation that the patentee engaged in inequitable conduct, was preempted by the federal patent law). The state law claim here is premised on an assertion of inequitable conduct in the procurement of Exxon's patent.

Inequitable conduct is a defense to a claim of patent infringement when the patent was obtained by a failure of the patent applicant to comply with the duty of disclosure to the PTO. *See* 37 C.F.R. § 1.56 (1997). There already are remedies for such misconduct, including unenforceability of the patent, *see* 35 U.S.C. § 282 (1994), and attorney fees when the case is found to be exceptional, *see id.* at § 285. Likewise, in cases of egregious misconduct or subsequent baseless attempts to enforce the patent, the patentee may be exposed to liability under the federal antitrust laws. *See Walker Process Equipment, Inc. v. Food Machinery & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, 147 USPQ 404 (1965) (fraudulent misrepresentation); *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611, 26 USPQ2d 1641 (1993) (objectively and subjectively baseless suit). Dow attempts to bypass these federal remedies by asserting a state law cause of action. I believe that such a cause of action is preempted because it frustrates federal patent policy by providing damages for inequitable conduct distinct from the remedies established under federal law. Permitting a state law claim to be based essentially on an assertion of inequitable conduct is essentially a duplication of federal remedies. It leads to the potential of conflicting results, an eventuality that preemption is intended to avoid. Just as in *Sears, Roebuck* and *Compco*, and in *Bonito Boats*, a state cause of action that conflicts with federal remedies is preempted.

The majority emphasizes that the tort of intentional interference with actual and pro-

spective contractual relations involves elements in addition to a finding of inequitable conduct. That assertion is of course correct, but it merely masks the real issue. It is well-established that a patent owner is entitled to assert its patent against those it believes are infringers. *See Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869, 45 USPQ2d 1225, 1232 (Fed.Cir.1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk if liability and/or the imposition of an injunction."). Whenever a patentee suspects that its patent is being infringed, it should, as a matter of civilized business practice, warn the suspected infringer to cease and desist, on pain of facing a lawsuit. If the accused infringer has a contractual relationship with another party, such as a customer, as is the usual case, that other party may be warned as well, as it is usually also an accused infringer. Warning infringers to stop infringing one's patent is a protected activity. The fact that the patent owner may lose its case, or even be found to be guilty of inequitable conduct does not mean that it had no right to demand that those it considered to be infringers stop their allegedly infringing conduct. Thus, the fact that this tort involves post-grant activities does not practically-speaking distinguish it from inequitable conduct *per se.*

Moreover, this case is not truly distinguishable from *Concrete Unlimited* because of any distinction between a patentee's good or bad faith. An accused infringer can always assert bad faith to get into state court; after this case, this will surely happen more often. Whether or not enforcement of a patent allegedly procured by inequitable conduct has been undertaken in good faith or in bad faith ultimately depends on whether the patent was in fact procured through inequitable conduct. Either way, the case is grounded on an assertion of inequitable conduct, a defense arising only in the context of a federal cause of action. The state law claim in this case is simply a proxy for the defense of inequitable conduct that was eliminated when the patentee, Exxon, mooted the infringement claim by granting an immunity from suit. Dow is ultimately attempting to try in state court the issue of inequitable conduct that Exxon's grant of immunity in the federal case took away.

Just as inequitable conduct has become a staple defense in an infringement suit, the result of this decision may well be the generation of a staple state tort of interference with contract essentially based on conduct in the patent office involving the procurement of the patent. Every federal patent infringement suit in which a patentee has warned an accused infringer having a contract or business relationship with another party regarding the accused subject matter may now be fair game for a state tort action. I hope not, because I do not agree that the law provides for such an action, that it is necessary as a matter of policy, or that we should be creating new causes of action when federal law already provides remedies for the alleged offense. Maintenance of a bright line rule that state tort law does not provide a damages remedy for inequitable conduct best serves the law's goal of providing clarity concerning the distinction between federal and state causes of action. Accordingly, because the issue of inequitable conduct is part of a patent infringement law suit, it should not be raised separately in the guise of a state law claim. I therefore respectfully dissent from the reversal of the district court's dismissal of Dow's claim for intentional interference with actual and prospective contractual relations.