[No. A129727. First Dist., Div. Two. Apr. 24, 2012.]

CALDERA PHARMACEUTICALS, INC., Plaintiff and Appellant, v.
REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Defendants
and Respondents.

342

---

COUNSEL

SNR Denton US, Arthur S. Beeman, Joel T. Muchmore; Barr and Barr Attorneys, Andrew R. Verriere; Gregg Rzepczynski & Associates and Gregg Rzepczynski for Plaintiff and Appellant.

Fenwick & West, Lynn H. Pasahow, Charlene M. Morrow, Carolyn Chang, Mary E. Milionis and Theis Finlev for Defendants and Respondents.

---

OPINION

**RICHMAN, J.**—Federal courts have exclusive jurisdiction to try suits that are based on patents, which are themselves a creature of the federal Constitution. The appearance of a patent in state court is more than likely to unsettle lawyers and judges because, as one academic commentator observed: "Patents scare many lawyers. Mental charts of the law are apt to designate this unexplored territory as a federal enclave, peopled by dragons and serpents of purely federal origin." (Cooper, *State Law of Patent Exploitation* (1972) 56 Minn. L.Rev. 313.) Even federal judges can be uneasy. One of the most eminent wrote that the federal courts "deal . . . with a great number of patents in the higher reaches of electronics, chemistry, biochemistry, pharmacology, optics, harmonics and nuclear physics, which are quite beyond the ability of the usual judge to understand without the expenditure of an inordinate amount of educational effort by counsel and of attempted self-education by the judge, and in many instances, even with it." (Friendly, Federal Jurisdiction: A General View (1973) pp. 156–157.)

But the academic commentator cautioned that this trepidation is unreasonably exaggerated: "Even a timid glance into the unknown land, however, reveals the friendly wagging tail of state contract law . . . . At least a living ghost of state tort law lingers in these lands too. For, surprising at it may seem, it is well established that most aspects of contractual transactions affecting patents are governed by state law. State law has likewise afforded tort remedies for a variety of wrongs by and against patent owners . . . ." (Cooper, *State Law of Patent Exploitation, supra,* 56 Minn. L.Rev. 313.) Another commentator, now the author of a leading treatise on patents, characterized the interface between state and federal law as "one of the darkest corridors of . . . jurisdiction." (Chisum, *The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation* (1971) 46 Wash. L.Rev. 633, 639.)

Here we must go down that corridor, to decide whether the trial court correctly granted judgment on the pleadings against a patent licensee which sued the licensor for fraud and breach of a license agreement. Applying the standards of *Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800, 809 [100 L.Ed.2d 811, 108 S.Ct. 2166] (*Christianson*), we conclude from a careful reading of the licensee's complaint that, at most, only a fraction of the licensor's allegedly wrongful acts implicate the patent law jurisdiction of the federal courts, with the vast majority of those acts involving a claim for relief solely under California law. Because they do, we conclude that the trial court erred in assigning jurisdiction to the federal courts, and we reverse.

## BACKGROUND

On the last day of 2007 Caldera Pharmaceuticals, Inc. (Caldera), commenced this action with a complaint for fraud and breach of the "Exclusive Patent Licensing Agreement" (license agreement) Caldera executed with the Regents of the University of California (Regents or University) in September 2005.[1] Because the Regents had assigned their rights under the agreement to Los Alamos National Security, LLC (LANS), in April 2006, Caldera made LANS a codefendant.[2] The relevant pleading for present purposes is Caldera's second amended complaint, which was filed in July 2008. Its pertinent allegations may be summarized as follows:

[1] Caldera and the Regents had previously executed an "Exclusive Patent License Option Agreement" (license option agreement) in November 2004. However, due to redacted parts of the copy in the record concerning how much Caldera paid, it cannot be determined when the option period either began or ended. Although there are a few references to this earlier agreement, Caldera states in its opening brief that it is "the License Agreement that forms the core of the allegations" of the pleading we review here. Still, as will be seen, the license option agreement is not wholly irrelevant to our analysis.

At the outset we face a problem with terminology. Notwithstanding the titles of the option and licensee agreements, Caldera further states in its opening brief that "there are no actual patents at stake," only patent applications. Although the difference between a patent and an application for a patent may be enormous in the real world, the distinction is largely academic here, because the absence of an actual patent carries no significance for the validity of the license agreement. (See *Aronson v. Quick Point Pencil Co.* (1979) 440 U.S. 257, 258–259 [59 L.Ed.2d 296, 99 S.Ct. 1096] (*Aronson*) ["federal patent law [does not] pre-empt[] state contract law so as to preclude enforcement of a contract to pay royalties to a patent applicant, on sales of articles embodying the putative invention, for so long as the contracting party sells them, if a patent is not granted"], 262 ["State law is not displaced merely because the contract relates to intellectual property that may or may not be patentable . . . ."].)

[2] Caldera described LANS as "the manager of the Los Alamos National Laboratory," and an entity whose "members . . . are the Regents; Bechtel Corporation; BWX Technologies, Inc; and Washington Group International, Inc."

The Regents possessed four patents "related to a Method for Detecting Binding Constants Using Micro X-Ray Fluorescence."[3] Section 11 of the license agreement was titled "PATENT PROSECUTION, MAINTENANCE AND DISCLAIMER." Under section 11.1, the Regents agreed that it "will prosecute U.S. patent applications identified in Appendix A . . . and will maintain U.S. patents identified in Appendix A." Section 11.5 provided that "The University agrees to provide written notification to the Licensee if the University intends to terminate prosecution of any of the U.S. patent applications identified in Appendix A. . . . [A]bandonment of any of the U.S. patent applications will be at the sole discretion of the University. If the University elects to terminate prosecution of a U.S. patent application . . . , the Licensee may elect in writing to assume responsibility for such prosecution at its own expense." Section 11.6 provided that "The costs associated with U.S. and Patent Cooperation Treaty (PCT) cases will be borne by the University." And section 11.7 specified that in order "to obtain and maintain international rights," Caldera "must diligently pursue, at the Licensee's expense, in the name of the University and assigned to the University, the filing, prosecution, and maintenance of all international patent applications and patents listed in Appendix A."

To develop this technology, the Regents granted Caldera the "exclusive license to make, have made, use, import, sell and offer to sell, and have sold, LICENSED INVENTIONS and LICENSED SERVICES under the PATENT RIGHTS." Caldera agreed to "use its best efforts" to develop the technology,

---

[3] Appendix A to the agreement identified the four patents as follows:

"DOE S-94,661 'Method for Detecting Binding Events Using Micro X-Ray Fluorescence Spectrometry,' . . . U.S. Patent Application No. 09/850 filed May 16, 2001.

"DOE S-99,911 'Flow Method and Apparatus for Screening Chemicals Using Micro X-Ray Fluorescence,' U.S. Patent Application No. 10/206,524, filed July 25, 2002.

"DOE S-100,585 'Method and Apparatus for Detecting Chemical Binding,' . . . U.S. Patent Application No. 10/621,825, filed July 16, 2003.

"DOE S-102,376 'Drug Development and Manufacturing,' . . . U.S. Patent Application No. 10/880,388, filed June 29, 2004."

Caldera—which describes its "primary business [as] the creation of scientific technologies that assist with the design and development of pharmaceutical products and the measurement of drug/protein interactions"—was given the domestic and international rights to these patents. Caldera alleged that it "also licensed the rights to patent DOE S-104,901, which is a continuing application of [DOE] S-99, 911."

What Caldera terms a "continuing application" is more correctly called a "continuation application." It is essentially a resubmission of a patent application that usually includes minor corrections and amendments, but it can broaden the scope of the original application. (See 35 U.S.C. § 120; *Hakim v. Cannon Avent Group, PLC* (Fed.Cir. 2007) 479 F.3d 1313, 1317; U.S. Patent and Trademark Off., Manual of Patent Examining Procedure (8th ed., rev. July 2010) § 201.07, p. 200-53 (MPEP).)

and to make available to the Regents "any improvements or developments" Caldera might make to the patents.[4]

Caldera alleged that "On or about August 8, 2005, the defendants abandoned the patent application known as DOE S-99,911 and filed DOE S-104,901 as a continuing patent application. On or about May 31, 2006, the defendants abandoned the patent application known as DOE S-104,901. The abandonment of patent application DOE S-104,901 was done without providing the contractually required notice to plaintiff . . . [and] constitutes a material breach of Section 11.5 of the License Agreement.

"The subject matter of patent applications DOE S-99,911 and DOE S-104,901 was resubmitted by the defendants to the U.S. Patent & Trademark Office as a 'continuation-in-part' ('CIP')[5] application styled S-109,085 on or about May 31, 2006. Such conduct had the effect of removing the invention claimed by this particular patent application from the scope of the License Agreement and has deprived Caldera of one of the primary benefits granted by the License Agreement.[6] Defendants have refused plaintiff's request for transfer of the rights created by this CIP patent application."

Caldera continued: "Patent application DOE S-102,376 was filed by the Regents with the United States Patent & Trademark Office [(Patent Office)]

---

[4] The Regents were to be compensated with "the fees, royalties, and equity payments specified in Appendix B," which, apparently for reasons of confidentiality, is not included in the record. In addition, Caldera alleged that it "agreed to pay license fees, . . . grant a royalty-free license to the University of California for governmental or non-commercial purposes as to any improvements or developments to the technology made by Caldera, and issue 3% of its common stock to the [University] or its nominee."

The license agreement has a provision specifying that it "will be interpreted and construed in accordance with the laws of the State of California, excluding any choice of law rules that would direct the application of laws of another jurisdiction." The supremacy of federal law that would require application of federal patent law in a federal court obviously displaces any private contractual agreement to follow California law. (See *Gjerlov v. Schuyler Laboratories, Inc.* (Fed.Cir. 1997) 131 F.3d 1016, 1020, fn. 1; *Fairchild Semiconductor v. Third Dimension (3D)* (D.Me. 2008) 589 F.Supp.2d 84, 95, fn. 76.)

[5] "A continuation-in-part [patent] application is just what its name implies. It partly continues subject matter disclosed in a prior application, but it adds new subject matter not disclosed in the prior application. Thus, some subject matter of a CIP application is necessarily different from the original subject matter. *See, e.g.*, Manual of Patent Examining Procedure § 201.08 (7th ed. Rev. 1 Feb. 2000). . . . ('A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application . . . , repeating some substantial portion or all of an earlier nonprovisional application and *adding matter not disclosed* in the said earlier nonprovisional application.')" (*University of West Virginia v. VanVoorhies* (Fed.Cir. 2002) 278 F.3d 1288, 1297.)

[6] The precise nature of this "invention" is not described in the complaint, or in the license agreement.

prior to execution of the License Agreement for the purpose of obtaining foreign patent protection for certain key elements of the technology being licensed to Caldera." In order for Caldera to act to protect its international rights to the patents under section 11.7, "it was necessary for the Regents to make timely PCT filings with patent applications DOE S-99,911, DOE S-100,585, and DOE S-102,376.

"On or about October 5, 2006, plaintiff Caldera discovered that the defendants had failed to make the necessary filing for patent application DOE S-102,376. The fact that the defendants had failed to file this PCT patent application was not disclosed to plaintiff Caldera prior to execution of the License Agreement." "The defendants' failure to file the PCT for patent application DOE S-102,376 that would have enabled plaintiff to proceed with patent filings in Japan and with the European Patent Office constitutes a material breach of the License Agreement."

Then Caldera alleged this same failure also amounted to fraud: "At the time that it entered into the License Agreement, Caldera reasonably believed that a PCT filing for patent application DOE S-102,376 had been or would be timely made by the Regents such that Caldera would be able to proceed with its written election in Appendix A of the License Agreement to seek patent protection in Japan and in the European Union countries and at all times relevant hereto relied to its detriment on such belief and the ability to proceed with such Japanese and European filing as authorized by Appendix A by entering into the License Agreement and proceeding to operate its business thereunder." LANS assumed that responsibility when it became the Regents' assignee in April 2006, whereupon "LANS and its legal staff became responsible for the prosecution and handling of the pertinent U.S. and foreign patent applications."

Because Caldera had "a relationship of trust and confidence" with them, "LANS and its lawyers have acted as legal counsel for Caldera with respect to efforts related to the securing and protection of the licensed inventions and patent rights, and . . . had a duty to Caldera to ensure that the appropriate and necessary actions were taken to protect Caldera's domestic and international patent rights." "The fact that the PCT application for patent application DOE S-102,376 had not been timely filed was intentionally concealed from and not disclosed to Caldera prior to execution of the License Agreement, notwithstanding that the Regents were fully aware that obtaining foreign protection in Japan and the European Union was of great importance to Caldera." LANS

"also intentionally concealed from Caldera the loss of the rights to the invention covered by patent application DOE S-104,901." LANS was aware that, in "expectation . . . that the international patent rights for patent application DOE S-102,376 would be secured, Caldera proceeded to raise substantial amounts of money, hire staff, market its intellectual property rights for use in business partnerships, and purchase specialized scientific equipment," and Caldera did the same "in reliance on its belief that the rights to the invention [were] covered by patent application DOE S-104,901." Meanwhile, LANS "intentionally took steps . . . to wrongfully divert ownership of the covered invention to LANS."

Caldera further alleged that "the defendants have failed to honor the exclusivity provisions of the option agreement [see fn. 1, *ante*] and License Agreement by disclosing technology and know-how covered by the licensee to competitors of Caldera . . . and by advertising and promoting a willingness to compete with Caldera." In addition, "the defendants have breached the option agreement and . . . License Agreement by utilizing the technology and know-how covered by the license to competitors of Caldera" and by "utilizing the technology and know-how for development work done on behalf of or in conjunction with third parties . . . during the period from 2004 through 2007."

Based on these allegations, Caldera stated causes of action for (1) breach of contract against the Regents and LANS; (2) fraud against LANS; and (3) breach of the covenant of good faith and fair dealing against the Regents and LANS. Caldera sought compensatory damages of $400 million, punitive damages, prejudgment interest, and costs.

Twenty-two months later, Regents and LANS (when referred to collectively, defendants) jointly moved for judgment on the pleadings, on the sole ground that exclusive jurisdiction resided in the federal courts because Caldera's action was, ultimately, about the patent solicitations. After hearing argument and considering voluminous papers, the trial court granted the motion, concluding that "the court has no jurisdiction, as to the entire complaint" in that Caldera's "complaint and theory of recovery are based upon substantial rules of patent law."[7]

---

[7] Defendants also filed a motion for summary adjudication of Caldera's causes of action for breach of the license agreement and breach of the covenant of good faith and fair dealing. The basis for this motion was that everything defendants did or failed to do was proper and within their contractual powers. This motion was dropped after judgment on the pleadings was ordered.

Caldera then perfected this appeal.[8,9]

## REVIEW

"A motion for judgment on the pleadings, made after the time for a demurrer has expired, in all other respects is the equivalent of a general demurrer. Like a demurrer, grounds for the motion must appear on the face of the complaint or be based on facts capable of judicial notice. We review the complaint de novo to determine whether the complaint states a cause of action, as a matter of law." (*Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1202 [76 Cal.Rptr.3d 804].) In conducting this review, we accept, and liberally construe, the truth of the complaint's properly pleaded factual allegations, but not contentions, deductions, or conclusions of fact or law. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515–516 [101 Cal.Rptr.2d 470, 12 P.3d 720]; *Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127 [130 Cal.Rptr.2d 517].) We are not concerned with Caldera's ability to prove its allegations, only whether its second amended complaint shows that it makes out a claim for some relief, even if an amount less than alleged. (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 496, fn. 2 [229 Cal.Rptr. 456, 723 P.2d 573]; *Matteson v. Wagoner* (1905) 147 Cal. 739, 742 [82 P. 436]; *Grain v. Aldrich* (1869) 38 Cal. 514, 520.)

---

[8] Caldera designated the July 15, 2010 order granting defendants' motion for judgment on the pleadings in its notice of appeal. Such an order is not independently appealable, but can be reviewed once a judgment is entered. (*Little v. Mountain View Dairies* (1950) 35 Cal.2d 232, 234 [217 P.2d 416]; *Neufeld v. State Bd. of Equalization* (2004) 124 Cal.App.4th 1471, 1476, fn. 4 [22 Cal.Rptr.3d 423].) In January 2011, we granted Caldera's motion to augment the record on appeal with the judgment entered on December 1, 2010 (the same day as the record was filed with this court). However, it could not be treated as the final judgment required to put the appeal on a sound footing if the separate cross-complaints defendants filed against Caldera were still unresolved. (*Dang v. Smith* (2010) 190 Cal.App.4th 646, 656 [118 Cal.Rptr.3d 490]; 9 Witkin (Cal. Procedure (5th ed. 2008) Appeal, § 117, p. 180.) Upon inquiry by this court, counsel for defendants established that the cross-complaints were voluntarily dismissed following entry of the order granting judgment on the pleadings. Pursuant to the policy of liberally construing a notice of appeal in favor of its sufficiency, we treat Caldera's notice as perfecting a valid, if premature, appeal from the final judgment entered on December 1, 2010. (See Cal. Rules of Court, rules 8.100(a)(2), 8.104(d).)

[9] Defendants direct our attention to the complaint Caldera filed in a federal district court in Illinois in October 2010. The complaint was filed against LANS, but the University was not named as a defendant, presumably because, as a state instrumentality; it is immune from federal suit without its permission. (See *Regents of Univ. of Cal. v. Doe* (1997) 519 U.S. 425, 429–431 [137 L.Ed.2d 55, 117 S.Ct. 900].) Although we granted defendants' request to take judicial notice of this pleading, and although it does appear to cover the same ground as Caldera's second amended complaint in state court, we do not agree with defendants that the filing of the federal complaint is a concession by Caldera "that its claims belong in federal court." On the contrary, once Caldera found itself evicted from state court, it was natural—and sensible—that it should continue with a federal venue instead of surrendering up all hope of judicial vindication.

The issue before us can be framed simply and without difficulty: must Caldera's monetary claims against defendants be resolved in federal court? Answering this question is hardly as easy as asking it.

## The State of Patent Law Prior to 1988

■ The United States Constitution provides that "The Congress shall have power to [¶] . . . [¶] . . . promote the progress of science and useful arts, by securing for limited times to . . . inventors the exclusive right to their . . . discoveries." (U.S. Const., art. I, § 8, cls. 1, 8.) Since 1800 Congress has located the exclusive jurisdiction to try patent infringement cases in federal court. (See *Campbell v. Haverhill* (1895) 155 U.S. 610, 620 [39 L.Ed. 280, 15 S.Ct. 217].) At present, jurisdiction over cases "arising under" patent law is vested in the district courts (28 U.S.C. §§ 1331, 1338(a)),[10] with all appeals heard by the United States Court of Appeals for the Federal Circuit. (28 U.S.C. § 1295(a)(1); *Cardinal Chemical Co. v. Morton Int'l, Inc.* (1993) 508 U.S. 83, 89 [124 L.Ed.2d 1, 113 S.Ct. 1967].)[11]

■ Although patents are a creation of federal law, it became quickly settled that a great amount of state law activity was compatible with the limited scope of federal exclusivity. Since 1850, the construction of patent license agreements has been left to state contract law. (*Luckett v. Delpark* (1926) 270 U.S. 496, 502, 510 [70 L.Ed. 703, 46 S.Ct. 397] ["where a . . . complainant makes his suit . . . under a contract of license . . . or for damages for a breach of its covenants, . . . he does not give the federal district court jurisdiction of the cause as one arising under the patent laws"]; *Wilson v. Sandford et al.* (1850) 51 U.S. 99, 100–101 [13 L.Ed. 344]; *Mars, Inc. v. Coin Acceptors, Inc.* (Fed.Cir. 2008) 527 F.3d 1359, 1370; *Power Lift, Inc. v.*

---

[10] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" (28 U.S.C. § 1331), and "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . No State court shall have jurisdiction over any claim for relief under any Act of Congress relating to patents . . . ." (28 U.S.C. § 1338(a) (section 1338(a)).)

[11] This court recently noted that, although we are required to accept the construction of federal law when it comes from the United States Supreme Court, we will look to other federal courts only for the persuasiveness of their decisions concerning federal law. (See *Karuk Tribe of Northern California v. California Regional Water Quality Control Bd., North Coast Region* (2010) 183 Cal.App.4th 330, 352 [108 Cal.Rptr.3d 40].) But the Federal Circuit is not just any circuit, at least when it comes to patent law. "Federal Circuit law governs whether federal patent law preempts a state law claim" (*Ultra-Precision Manufacturing, Ltd. v. Ford Motor Co.* (Fed.Cir. 2005) 411 F.3d 1369, 1376) "in order to serve one of the principal purposes for the creation of this court: to promote uniformity in the law with regard to subject matter within our exclusive appellate jurisdiction." (*Midwest Industries, Inc. v. Karavan Trailers, Inc.* (Fed.Cir. 1999) 175 F.3d 1356, 1359.) Given that the Federal Circuit Court of Appeals is, apart from the Supreme Court, the only federal court with a nationwide authority to speak on patent issues, its decisions should receive more than the standard pro forma quantum of deference.

*Weatherford Nipple-Up Systems, Inc.* (Fed.Cir. 1989) 871 F.2d 1082, 1085; cf. Chisum, *The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation, supra,* 46 Wash. L.Rev, 633, 645 ["federal patent laws do not directly deal with licenses and impose no formal requirements on them"]; Cooper, *State Law of Patent Exploitation, supra,* 56 Minn. L.Rev. 313, 350 ["The historic ground for excluding license litigation from federal patent jurisdiction was in large part that licenses have no statutory basis."].) "Commercial agreements traditionally are the domain of state law. State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable; the states are free to regulate the use of such intellectual property in any manner not inconsistent with federal law." (*Aronson v. Quick Point Pencil Co., supra,* 440 U.S. 257, 262; accord, *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.* (1989) 489 U.S. 141, 156 [103 L.Ed.2d 118, 109 S.Ct. 971]; *Dow Chemical Co. v. Exxon Corp.* (Fed.Cir. 1998) 139 F.3d 1470, 1474.) But that proviso is important: state law cannot operate contrary to the aims of federal patent policy. (See *Bonito Boats, Inc. v. Thunder Boats, Inc., supra,* at p. 152; *Kewanee Oil Co. v. Bicron Corp.* (1974) 416 U.S. 470, 479 [40 L.Ed.2d 315, 94 S.Ct. 1879]; *Lear, Inc. v. Adkins* (1969) 395 U.S. 653, 673 [23 L.Ed.2d 610, 89 S.Ct. 1902].)

■ This restrained view of federal jurisdiction was not limited to license agreements. As the United States Supreme Court long ago explained, under what is now section 1338(a): "if the suit be brought to enforce or set aside a contract, though such contract be connected with a patent, it is not a suit under the patent laws, and jurisdiction . . . can only be maintained upon the ground of diversity of citizenship. . . . [Section 1338(a)] 'does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdictions of *cases* arising under those laws. There is a complete distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading . . . sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may [also] appear in the plea . . . . The determination of such questions is not beyond the competency of the state tribunals.' " (*Excelsior W.P. Co. v. Pacific Bridge Co.* (1902) 185 U.S. 282, 285–287 [46 L.Ed. 910, 22 S.Ct. 681], quoting *Pratt v. Paris Gas Light & Coke Company* (1897) 168 U.S. 255, 259 [42 L.Ed. 458, 18 S.Ct. 62]; accord, *H. J. Heinz Co. v. Superior Court* (1954) 42 Cal.2d 164, 172–173 [266 P.2d 5]; see *New Marshall Co. v. Marshall Co.* (1912) 223 U.S. 473, 478 [56 L.Ed. 513, 32 S.Ct. 238] ["courts of a State may . . . construe and enforce contracts relating to patents"].)

■ Half a century ago, this court explained the distinction as follows: " 'Reduced to its lowest terms, the correct rule is that if the plaintiff founds his suit directly on a breach of some right created by the patent laws, he makes a case arising under those laws and only a Federal court has

jurisdiction; but if he founds his suit on some right vested in him by the common law, or by general equity jurisprudence, he makes a case arising under state law and only a state court has jurisdiction. . . . A case founded on a principle of tort, contract, or equity law is a case arising under state law. And whichever court has jurisdiction by reason of the nature of the cause of action advanced by the plaintiff, that court may decide such issues as arise incidentally to a decision. If a plaintiff sues in a Federal court for infringement, and the defendant sets up rights under a contract, the court may reach its conclusion upon an issue of contract law. If the plaintiff sues in a state court for breach of a contract, the state court may decide an issue raised as to the validity . . . of the patent. This is the almost universal rule.' " (*Rogers v. Hensley* (1961) 194 Cal.App.2d 486, 490 [14 Cal.Rptr. 870], quoting Annot., Jurisdiction of state courts over actions involving patents (1947) 167 A.L.R. 1114, 1118–1119.)

■ Thus, in 1975 another Court of Appeal could summarize with scant fear of contradiction: "Patent matters primarily concerned with either consensual relations or tortious wrongdoing may be tried in state courts and where such a suit is brought, validity of a patent or its infringement may properly be considered by a state court. [Citation.] Jurisdiction of the state court founded on contract or tort is not defeated because the existence, validity or construction of a patent may be involved. [Citation.]" (*Miller v. Lucas* (1975) 51 Cal.App.3d 774, 776 [124 Cal.Rptr. 500].) The author of a law review article cited by that Court of Appeal summarized that state courts retain jurisdiction "over a wide variety of suits involving contracts affecting patent rights or involving tort claims arising out of interference with business relations in which patent rights are implicated," and are "regularly called upon to determine the scope and validity of federal patents" with the "clear bless-[ing]" of the United States Supreme Court.[12] (Cooper, *State Law of Patent*

---

[12] Some post-*Christianson* Court of Appeal decisions appear to treat this principle as no longer sound, on the theory that any decision affecting the validity of a patent qualifies as "a substantial question of federal patent law" as that phrase is used in *Christianson, supra,* 486 U.S. at page 809. (See *E-Pass Technologies, Inc. v. Moses & Singer, LLP* (2010) 189 Cal.App.4th 1140, 1149–1152 [117 Cal.Rptr.3d 516]; *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 248–251 [107 Cal.Rptr.3d 373]; *Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1426–1427 [13 Cal.Rptr.3d 766].) On the other hand, the United States Supreme Court, the Federal Circuit, two California Courts of Appeal, and a leading treatise writer continue after *Christianson* to cite the principle that a patent's validity can be decided by state courts. (*Matsushita Elec. Industrial Co. v. Epstein* (1996) 516 U.S. 367, 384 [134 L.Ed.2d 6, 116 S.Ct. 873]; *Finch v. Hughes Aircraft Co.* (Fed.Cir. 1991) 926 F.2d 1574, 1581, fn. 5; *Jacobs Wind Electric v. Florida Dept. of Transportation* (Fed.Cir. 1990) 919 F.2d 726, 728; *Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 124 [61 Cal.Rptr.3d 221]; *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1186 [121 Cal.Rptr.2d 794]; 8 Chisum on Patents (2006) § 21.02[1][e], p. 21-136; cf. *Applera Corp. v. MP Biomedicals, LLC* (2009) 173 Cal.App.4th 769, 785 [93 Cal.Rptr.3d 178] ["the issue of patent validity could be litigated in this case only

*Exploitation, supra*, 56 Minn. L.Rev. 313, 318, 320.) And, the author went on, "State law today clearly controls many incidents of patents," "most aspects of the contractual relationships created by patent licenses,"[13] and "may control the use of patented inventions as such." (Cooper, *State Law of Patent Exploitation*, at pp. 344, 324, 372.)

This sector of the state-federal interface was largely peaceful—and rarely the source of controversy. That is, until 1988.

### *Christianson* **and Afterwards**

That was the year the United States Supreme Court decided *Christianson*, and injected the "well-pleaded complaint" concept into patent law. The *Christianson* court held that exclusive federal jurisdiction vests over any case "in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (*Christianson, supra*, 486 U.S. 800, 809.) The Supreme Court added this proviso: "Nor is it necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential. If 'on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks,' [citation], then the claim does not 'arise under' those laws. [Citation.] Thus, a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories." (*Christianson, supra*, at p. 810, citing & quoting *Franchise Tax Bd. v. Laborers Vacation Trust* (1983) 463 U.S. 1, 26 [77 L.Ed.2d 420, 103 S.Ct. 2841] [text & fn. 29].) When an issue of federal law is "merely possible," or "doubtful and conjectural," or "lurking in the background," this attenuated possibility will not "extinguish the jurisdiction of the state[]." (*Gully v. First Nat. Bank* (1936) 299 U.S. 109, 118, 117 [81 L.Ed. 70, 57 S.Ct. 96] (*Gully*).)

---

as an affirmative defense . . . , which cannot create federal jurisdiction" (italics omitted)].) Given that Caldera is not seeking to have any of the patents declared invalid, we merely note this disagreement without expressing any opinion on it.

[13] "In line with this general statement," the author continued that "decisions may readily be found referring a wide variety of common contractual problems to state law. State law has been applied to such patent license issues as defining the general rules of interpretation, capacity to contract, fraudulent procurement of the license, the 'shop right' of an employer to a license of employee inventions, consideration, failure of consideration and perhaps eviction, definiteness required of a contractual promise, statutes of frauds, the peculiar consequences of sealed instruments, the parol evidence rule, implied warranties, assignability of the licensee's rights, the dependency of mutual promises and waiver of breach by continuing performance, capacity to be sued, choice of law rules, rescission, and reformation." (Cooper, *State Law of Patent Exploitation, supra*, 56 Minn. L.Rev. 313, 351–352, fns. omitted.)

■ Given that the "well-pleaded complaint" test looks only at the plaintiff's pleadings to determine "the plaintiff's right to relief," excluded from consideration is " ' "anything alleged [by the plaintiff] in anticipation or avoidance of defenses which it is thought the defendant may interpose." ' "[14] (*Christianson, supra,* 486 U.S. 800, 809, quoting *Franchise Tax Bd. v. Laborers Vacation Trust, supra,* 463 U.S. 1, 10.) Although it has been said that the well-pleaded "rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law" (*Caterpillar Inc. v. Williams* (1987) 482 U.S. 386, 392 [96 L.Ed.2d 318, 107 S.Ct. 2425]), so that power is not absolute: "[M]erely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law. Just as 'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint' [citations], so a plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law questions." (*Christianson, supra,* at p. 809, fn. 3.)

■ In explaining what identifies a well-pleaded claim, the Federal Circuit has added several refinements. "*Christianson* teaches that . . . scrutiny of the claims pleaded is thorough, for we must ascertain whether *all* the theories by which a plaintiff could prevail on a claim rely *solely* on resolving a substantial question of federal patent law." (*Hunter Douglas, Inc. v. Harmonic Design, Inc.* (Fed.Cir. 1998) 153 F.3d 1318, 1328–1329, italics added, overruled on a different point in *Midwest Industries, Inc. v. Karavan Trailers, Inc., supra,* 175 F.3d 1356, 1358–1359.) Moreover, " 'special attention [is] directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws.' " (*Board of Regents, University of Texas v. Nippon* (Fed.Cir. 2005) 414 F.3d 1358, 1362, quoting *Air Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.* (Fed.Cir. 1985) 755 F.2d 1559, 1562.)

---

[14] Because the critical perspective is that of the plaintiff, it certainly follows that a *defendant* cannot create federal jurisdiction by setting up a defense or counterclaim that is based on patent law. (*Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.* (2002) 535 U.S. 826, 830–832 [153 L.Ed.2d 13, 122 S.Ct. 1889]; *Christianson, supra,* 486 U.S. 800, 809.) Here, given the unusual timing and the manner in which the legal sufficiency of Caldera's complaint was resolved, a good deal of discovery was conducted prior to the trial court granting defendants judgment on the pleadings. In arguing for reversal of that judgment, Caldera recites some of the material defendants produced when responding to interrogatories. This material did not originate from Caldera and was not in existence at the time Caldera filed its second amended complaint. Because this information goes beyond " 'the face of [Caldera's] complaint' " (*Christianson, supra,* 486 U.S. 800, 810), it will be ignored. (See *Coleman v. Estes Express Lines, Inc.* (9th Cir. 2011) 631 F.3d 1010, 1016; *Chudasama v. Mazda Motor Corp.* (11th Cir. 1997) 123 F.3d 1353, 1367; *Trugreen Landcare, L.L.C. v. Scott* (N.D.Tex. 2007) 512 F.Supp.2d 613, 620.)

Accordingly, just because a patent is in the vicinity does not inevitably and invariably bring the controversy within the ambit of exclusive federal jurisdiction. (*Pratt v. Paris Gas Light & Coke Company, supra,* 168 U.S. 255, 259; *Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 216 [308 P.2d 732]; *Holiday Matinee, Inc. v. Rambus, Inc., supra,* 118 Cal.App.4th 1413, 1423; *Durgom v. Janowiak* (1999) 74 Cal.App.4th 178, 182 [87 Cal.Rptr.2d 619].) It remains the rule that "a state court has authority to adjudicate patent questions so long as the action itself does not arise under the patent laws. [Citations.] This analysis remains unchanged regardless of whether the state law claim is grounded in contract or tort." (*Dow Chemical Co. v. Exxon Corp., supra,* 139 F.3d 1470, 1475–1476; see *Aronson, supra,* 440 U.S. 257, 262.) Of course, the converse proposition is equally true: simply titling a claim as one for breach of a licensing contract does not ensure that the matter will stay out of a federal district court.[15]

In the wake of *Christianson,* charting the precise border between state and federal jurisdictions has resumed, with much of the activity found in the context of attorney malpractice. (See Note, *Embedded Federal Questions, Exclusive Jurisdiction, and Patent-Based Malpractice Claims* (2009) 51 Wm. & Mary L.Rev. 1237.)

█ The Federal Circuit has been formulating inclusive categorizations of disputes that are proper for federal resolution: "Post-*Christianson,* we have held that, for purposes of section 1338(a) jurisdiction, at least four issues of federal patent law are substantial enough to satisfy the jurisdictional test. They are infringement [citations]; inventorship issues under 35 U.S.C. §§ 116, 256 [citations]; attorney fees under 35 U.S.C. § 285 [citations], and the revival of an allegedly unintentionally abandoned patent application under 35 U.S.C. §§ 41, 133, or in the alternative, the right to file a continuation application under 35 U.S.C. § 120 [citations]." (*Hunter Douglas, Inc. v. Harmonic Design, Inc., supra,* 153 F.3d 1318, 1330.) Even so, that court continues to recognize that "the mere presence of a patent as relevant evidence to a claim does not by itself present a substantial issue of patent law." (*Laboratory Corp. v. Metabolite Laboratories* (Fed.Cir. 2010) 599 F.3d 1277, 1284.) Moreover, ordinarily "breach of contract is a fact specific application of state law," and "a breach of contract analysis would not require 'resort to the experience, solicitude, and hope of uniformity that a federal forum offers.' [Citation.] Hearing a context-driven, state law contract issue in this court provides no 'hope of uniformity' in the patent laws." (*Id.* at p. 1285, quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.* (2005) 545 U.S. 308, 312 [162 L.Ed.2d 257, 125 S.Ct. 2363].)

---

[15] Wholly apart from the issue of whether a claim is based on patent law, a dispute may be tried in federal court if there is diversity of citizenship between the parties under 28 United States Code section 1332(a).

In addition, several Courts of Appeal in this state have recently addressed the issue in detailed and thoughtful opinions, some allowing the case to remain in state court, some not.[16] Aided with them, we now consider whether Caldera's complaint was properly ejected from state court.

### *Christianson* Applied to Caldera's Complaint

As already noted, Caldera's second amended complaint has causes of action for breach of contract and fraud, claims traditionally left to state courts. The existence and enforceability of contracts is a function of state law. (See Civ. Code, §§ 1549 et seq. [nature of contract], 3300 [measure of damages]; *Gully, supra*, 299 U.S. 109, 115, 114 [describing contracts as "a creation of the state" that are "valid and enforceable without reference to a federal law"].) And the civil tort of fraud is likewise a creation of state law (see Civ. Code, §§ 1571–1574, 1709–1710), and left to state courts to adjudicate. (*John Woods & Sons v. Carl* (1906) 203 U.S. 358, 359 [51 L.Ed. 219, 27 S.Ct. 99]; *Allen v. Riley* (1906) 203 U.S. 347, 352–356 [51 L.Ed. 216, 27 S.Ct. 95]; *Patterson v. Kentucky* (1878) 97 U.S. 501, 503–509 [24 L.Ed. 1115]; Annot., Jurisdiction of State Courts Over Actions Involving Patents, *supra*, 167 A.L.R. 1114, 1144–1145.)

Certainly, patents—or more precisely, patent applications—are involved here, in the sine qua non sense of proximate cause analysis, so that without them there would be no license agreement, and thus no claim that the license agreement was breached. The patent applications are, in this limited sense, "necessary" to Caldera's causes of action (*Christianson, supra*, 486 U.S. 800, 809) in the way that an infringement suit requires the existence of a patent that can be infringed. However, although the patents may be a predicate for

---

[16] (See *E-Pass Technologies, Inc. v. Moses & Singer, LLP, supra*, 189 Cal.App.4th 1140 [state court retains jurisdiction to try malpractice claim, even if the malpractice occurred in federal patent litigation]; *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP, supra*, 183 Cal.App.4th 238 [malpractice, fraudulent concealment, and breach of fiduciary claims for defective patent application that presented questions of causation and damages raised substantial issues of patent law, and was correctly sent to federal court]; *Applera Corp. v. MP Biomedicals, LLC, supra*, 173 Cal.App.4th 769 [patent licensor's suit for failure to pay royalties, alleged to be breaches of contract and the covenant of good faith and fair dealing, properly tried in state court]; *Lockwood v. Sheppard, Mullin, Richter & Hampton* (2009) 173 Cal.App.4th 675 [93 Cal.Rptr.3d 220] [inventor's claim that administrative reexamination of a patent's validity was improperly initiated by false representations cannot be adjudicated in state court when the claim is dependent on knowledge of United States Patent and Trademark Office practices and standards]; *Linear Technology Corp. v. Applied Materials, Inc., supra*, 152 Cal.App.4th 115 [party found in federal court to have infringed patent allowed to file state claims for breaches of contract, warranty, and covenant of good faith and fair dealing against third party allegedly responsible for infringement]; *Holiday Matinee, Inc. v. Rambus, Inc., supra*, 118 Cal.App.4th 1413 [only federal court could try causes of action centered on claim that defendant was not entitled to royalties on patent obtained by fraud].)

those causes of action, in a deeper sense they do not "create" them. (*Ibid.*; see *Luckett v. Delpark, supra*, 270 U.S. 496, 502 ["a suit by a patentee . . . under a license or assignment . . . for any remedy in respect of a contract permitting use of the patent is not a suit under the patent laws . . ."]; cf. *Speedco, Inc. v. Estes* (Fed.Cir. 1988) 853 F.2d 909, 913 ["[T]he fact that patent issues are relevant under state contract law to the resolution of a contract dispute 'cannot possibly convert a suit for breach of contract into one "arising under" the patent laws . . . .' "].)

■ The parties seem to agree that this is not a situation where Caldera is alleging a cause of action that is founded on the federal law of patents—or, as we put in 1961, " 'directly on a breach of some right *created* by the patent laws.' " (*Rogers v. Hensley, supra*, 194 Cal.App.2d 486, 490, italics added.) Thus, the first of the *Christianson* tests is inapplicable. The parties are thus left to disagree over whether the second test—"plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims" (*Christianson, supra*, 486 U.S. 800, 809)—applies to Caldera's complaint. Caldera draws our attention to the post-*Christianson* decision in *Grable*, where the Supreme Court stated that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum. [Citations.] [¶] But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts . . . . Thus, . . . the appropriateness of a federal forum to hear an embedded issue could be evaluated only after considering the 'welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.' [Citation.] Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., supra*, 545 U.S. at pp. 313–314, quoting *Franchise Tax Bd. v. Laborers Vacation Trust, supra*, 463 U.S. 1, 8; see *Empire HealthChoice Assurance, Inc. v. McVeigh* (2006) 547 U.S. 677, 699–701 [165 L.Ed.2d 131, 126 S.Ct. 2121] [*Grable* exemplifies a "slim category"].) Caldera clearly believes that these strict criteria for federal jurisdiction establish that its complaint belongs in state court.

Caldera is not so foolish as to deny that the patent applications have some relation to the complaint, but for Caldera they are merely "peripheral" and of

"ambient" importance. Citing *Linear Technology Corp. v. Applied Materials, Inc., supra*, 152 Cal.App.4th 115, 125–127, Caldera is even willing to concede that "an issue of patent law may be relevant" to its causes of action, but it insists that the presence of that issue " 'cannot possibly convert a suit for breach of contract into one "arising under" the patent laws,' " because the determination of its contract and fraud claims[17] will not necessitate "resolution of a *substantial* question of federal law, but . . . only factual questions" that would touch upon patents. (Italics added.)

■■■ Construction of the parties' license agreement has long been seen as a matter left to state law. (E.g., *Lear, Inc. v. Adkins, supra*, 395 U.S. 653, 661–662 ["the California Supreme Court's construction of the . . . licensing agreement is solely a matter of state law . . ."]; *Luckett v. Delpark, supra*, 270 U.S. 502, 510; *Wilson v. Sandford et al., supra*, 51 U.S. 99, 100–101.) A logical corollary is "[t]here is no necessary connection between the enforcement of such a contract according to its terms and the existence of a controversy arising under federal law." (*Gully, supra*, 299 U.S. 109, 114.) Indeed, more than 150 years of history establishes that breach of contract is not an intrinsically patent-dependent cause of action. In sum, the patent laws are neither "necessary" nor "essential" (*Gully, supra*, at p. 112; *Christianson, supra*, 486 U.S. 800, 809–810) to Caldera's cause of action for breach of the license agreement.

■■■ Nor is Caldera's fraud cause of action inherently incompatible with the integrity of the patent law system. The Federal Circuit has held "a state law tort claim is not preempted by the federal patent law, even if it requires the state court to adjudicate a question of federal patent law, provided the state law cause of action . . . is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." (*Dow Chemical Co. v. Exxon Corp., supra*, 139 F.3d 1470, 1473.) That same court has recently held that causes of action similar to those asserted by Caldera do not arise under section 1338(a) where the plaintiff's non-patent-based allegations show entitlement to relief. (*HIF Bio v. Yung Shin Pharmaceuticals Industrial* (Fed.Cir. 2010) 600 F.3d 1347, 1356–1357 [fraud and breach of contract claims based on "the defendants' alleged failure to keep their promises"]; see *Jim Arnold Corp. v. Hydrotech Systems, Inc.* (Fed.Cir. 1997) 109 F.3d 1567, 1572 ["if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one 'arising under' the patent laws"].) More than 80 years ago Justice Holmes

---

[17] Caldera tacitly acknowledges that its cause of action for breach of the covenant of good faith and fair dealing is dependent upon the validity of the cause of action for breach of the contract to which that covenant attaches because, where there is no breach of the contract, there can be no breach of the covenant implied in that contract. (See *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349–350 [100 Cal.Rptr.2d 352, 8 P.3d 1089]; *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35–36 [44 Cal.Rptr.2d 370, 900 P.2d 619]].)

upheld state jurisdiction to try a case that included "the breach of contract or wrongful disregard of confidential relations, both matters independent of the patent law." (*Becher v. Contoure Laboratories, Inc.* (1929) 279 U.S. 388, 391 [73 L.Ed. 752, 49 S.Ct. 356].) The California Court of Appeal reached the same conclusion on its own. (*Holley v. Hunt* (1936) 13 Cal.App.2d 335, 336–337 [56 P.2d 1240].) ▬▬ And the Federal Circuit has held that a "fraudulent nondisclosure . . . cause[] of action cover[s] a broad range of conduct that does not bear on federal patent policies, and . . . therefore [is] not preempted by federal patent law." (*University of Colorado Foundation v. American Cyanamid* (Fed.Cir. 1999) 196 F.3d 1366, 1371; see *Uroplasty, Inc. v. Advanced Uroscience, Inc.* (Fed.Cir. 2001) 239 F.3d 1277, 1280 [claim that defendant "used and divulged . . . confidential information" not within *Christianson* rule]; *Thompson v. Microsoft Corp.* (Fed.Cir. 2006) 471 F.3d 1288, 1291–1292 [undisclosed use of proprietary information actionable under state law even when information was used to obtain patent].)

This is a formidable heritage that defendants must push aside to divest a California court of the power to try Caldera's causes of action. So it is surprising that the state-federal interface and equilibrium concerning patent-related contract actions that existed for more than 150 years before *Christianson* goes unmentioned in defendants' brief. Defendants appear to believe that the issue of conflict between state and federal jurisdictions came into being only after *Christianson* was decided in 1988.[18] Nevertheless, defendants ably strive to defend their victory in the trial court and, armed with a wealth of post-*Christianson* authority, regard Caldera's complaint as honeycombed with substantial issues of patent law and other matters of exclusive federal jurisdiction. Specifically:

Defendants argue that Caldera's complaint "contains claims for fraud/concealment that rely entirely on the unique proposition that [defendants] in-house counsel were in fact acting as legal counsel for [Caldera], and in that role failed to disclose to [Caldera] that it had not made certain filings in one patent case, and that it elected not to continue prosecution in another patent case. Because the actions at issue relate to patent prosecution before the United States Patent Office, the attorney-client relationship alleged is a federally regulated relationship. In addition, each of the actions at issue relate to whether [defendants] took the correct actions before the United States Patent and Trademark Office. Adjudication of this claim will require resort to federal patent law to understand the relevant prosecution deadlines, to evaluate whether patent rights were actually lost as a result of [defendants']

---

[18] In their brief, defendants cite only four pre-*Christianson* decisions, only one of which, *Miller v. Lucas, supra*, 51 Cal.App.3d 774, quoted in the text, deals with the common border over patent-related issues shared between state and federal courts. *Miller* is cited twice in defendants' brief, but not for any purpose relevant to this history.

alleged actions, and to evaluate the alleged resulting damage, which is dependent on the assumption certain patent rights would have issued." Thus, in defendants' view, "the bulk of the alleged breaches of contract or tortious actions arise out of actions taken by the Regents during patent prosecution." So, for defendants, "the existence of the attorney-client relationship at issue and the merits of the claim asserted depend on adjudication of substantial issues of federal patent law."

A review of Caldera's second amended complaint shows the following particulars supporting its causes of action: (1) the abandonment of the applications for DOE S-99,911 and DOE S-104,901 without notice; (2) the "resubmission" of the "subject matter" of those applications to the patent office as application S-109,085; (3) the consequent loss of "the rights to the invention covered by patent application DOE S-104,901"; (4) defendants' refusal to "transfer" to Caldera "the rights created" by application S-109,085; (5) the failure "to make the necessary PCT filing for patent application DOE S-102,376" and then concealing that omission from Caldera; (6) the failure to "honor the exclusivity provisions of the option agreement and License Agreement by disclosing technology and know-how covered by the licensee to competitors of Caldera . . . and by advertising and promoting a willingness to compete with Caldera"; and (7) defendants' "utilizing the technology and know-how covered by the license to competitors of Caldera" and by "utilizing the technology and know-how for development work done on behalf of or in conjunction with third parties."

The prayer of Caldera's complaint should also be taken into account. (See *Board of Regents, University of Texas v. Nippon, supra*, 414 F.3d 1358, 1362.) Caldera is not asserting that any of the patents have been infringed, are invalid, or are otherwise unenforceable, claims that seem guaranteed adequate to secure federal jurisdiction. (See 35 U.S.C. § 281 ["A patentee shall have remedy by civil action for infringement of his patent."]; *Hunter Douglas, Inc. v. Harmonic Design, Inc., supra*, 153 F.3d 1318, 1329; *Holiday Matinee, Inc. v. Rambus, Inc., supra*, 118 Cal.App.4th 1413, 1426–1427 ["questions of patent . . . enforceability, like patent infringement, are substantial issues of patent law . . ."].) Nor does Caldera seek either to revive patents DOE S-99,911 and DOE S-104,901 or to have "application" S-109,085 voided or declared the rightful property of Caldera.[19] Finally, defendants will not be asked to transfer any right or patent applications.

[19] A careful reader might recall that abandonment was one of the Federal Circuit's categorical types of federal preemption. However, the ousting of state jurisdiction applies only to "the revival of an allegedly unintentionally abandoned patent application under 35 U.S.C. §§ 41, 133." (*Hunter Douglas, Inc. v. Harmonic Design, Inc., supra*, 153 F.3d 1318, 1330.) Caldera is not seeking revival of the patent applications which defendants are alleged to have *intentionally* abandoned.

Caldera's points (1) through (4)—defendants' alleged abandonment of patent applications DOE S-99,911 and DOE S-104,901 and their subsequent resubmission as the "application styled S-109,085," which "had the effect of removing the invention claimed by this particular patent application from the scope of the License Agreement and . . . deprived Caldera of one of the primary benefits granted by the License Agreement"—might sound like the makings of a cause of action for conversion. But Caldera, as the master of its complaint (*Caterpillar Inc. v. Williams, supra*, 482 U.S. 386, 392), has elected to frame its claim as breach of contract and fraud. These causes of action are creatures of state law. (*Gully, supra*, 299 U.S. 109, 114–115; *Dow Chemical Co. v. Exxon Corp., supra*, 139 F.3d 1470, 1476–1477.) As to whether defendants acted contrary to their obligations under the license agreement in a fraudulent manner, "patent law is not a necessary element of such determinations." (*Excelstor Technology v. Papst Licensing GMBH & Co.* (Fed.Cir. 2008) 541 F.3d 1373, 1377.)

 Caldera's point (5), the claimed failure of the Regents and LANS to make the filings required for Patent Cooperation Treaty (PCT; June 19, 1970, 28 U.S.T. 7645, T.I.A.S. No. 8733) protection of patent DOE S-102,376, can also be left to a California court. The Federal Circuit has held that "allegations relating to . . . PCT applications do not raise any issue of U.S. patent law." (*Davis v. Brouse McDowell, L.P.A.* (Fed.Cir. 2010) 596 F.3d 1355, 1360.) It has also held that PCT applications do not involve patents under United States law, but the patent laws of the countries where protection is being sought (*Board of Regents, University of Texas v. Nippon, supra*, 414 F.3d 1358, 1365.) For Caldera's complaint, those countries would be Japan and the members of the European Union. Moreover, even if, as defendants urged at oral argument, federal law may establish what would be the deadline for making a PCT filing, fixing that date would not constitute a *substantial* contested point of federal law. (*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., supra*, 545 U.S. 308, 313.) The operative point of Caldera's complaint is that whatever date was the last day to make a PCT filing, defendants missed that deadline.

Concerning Caldera's points (6) and (7), it has already been shown that breaches of confidential relations stand apart from patent law (*Becher v. Contoure Laboratories, Inc., supra*, 279 U.S. 388, 391; *Bonzel v. Pfizer, Inc.* (Fed.Cir. 2006) 439 F.3d 1358, 1363; *University of Colorado Foundation v. American Cyanamid, supra*, 196 F.3d 1366, 1371), and can be tried in state court. (*Christianson, supra*, 486 U.S. 800, 810; *Gully, supra*, 299 U.S. 109, 114–115; *Uroplasty, Inc. v. Advanced Uroscience, Inc., supra*, 239 F.3d 1277, 1280; *Thompson v. Microsoft Corp., supra*, 471 F.3d 1288, 1291–1292.)

Defendants' arguments against these conclusions are not persuasive.

Caldera's suzerainty over its complaint means that we reject defendants' persistent efforts to transmute the breach of contract and fraud causes of action into a malpractice claim. Certainly, the complaint has allegations concerning the attorneys who acted for defendants and how the failure of those attorneys to perform certain acts damaged Caldera. But there is nothing in the complaint to sustain defendants' naked assertion that the attorneys were "in-house." Although it may be pleaded in various forms, including fraud and breach of contract, the gravamen of professional malpractice is negligence. (*Landeros v. Flood* (1976) 17 Cal.3d 399, 408 [131 Cal.Rptr. 69, 551 P.2d 389]; *Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 65–66 [72 Cal.Rptr.2d 359]; *Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019, 1022 [268 Cal.Rptr. 637].) Caldera's failure to name the attorneys as defendants appears to signify that Caldera is willing to treat the attorneys as simply agents of defendants, and to subsume anything the attorneys did or failed to do within the larger context of its causes of action against defendants. Because Caldera must be accepted as the master of its complaint, defendants cannot prevail on this point.[20]

Defendants contend that Caldera's causes of action will "in fact require determination of the scope of patent rights and of infringement, as well as the patentability of and the subject matter disclosed by certain patent applications." Infringement is statutorily defined to encompass "whoever . . . makes, uses, offers to sell, or sells any patented invention" or "actively induces" any of those acts. (35 U.S.C. § 271(a)–(b).) Given what little Caldera's complaint tells us about any "invention" covered by the patent applications or the license agreement (see fn. 6 and accompanying text, *ante*), it hardly appears from the face of its complaint that Caldera is alleging that an actual infringement occurred.

Defendants argue that whether they and their counsel "had a duty to disclose information and ensure that appropriate and necessary actions were taken" depends on federal law defining the duties of counsel before the patent office; in defendants' words, "to establish the existence of a duty, [Caldera] must resort to patent law." (See 37 CFR §§ 1.32, 10.68, 10.76–10.77, 11.6–11.10 (2011).) Not true. Those duties derive from section 11.1 and 11.5 of the license agreement, a basis wholly independent of federal law. They are contractual duties, strictly between the parties, and have no reference to actions taken or not taken before the patent office. "If 'on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks,' [citation] then the claim does not 'arise under' those laws. [Citation.] Thus, a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless

---

[20] Caldera confirmed at oral argument that malpractice is not a basis of its complaint.

patent law is essential to each of those theories." (*Christianson, supra*, 486 U.S. 800, 810.) Caldera's claims are based on the contract it negotiated with the Regents, a basis that qualifies as a "reason" and "alternative theory" independent of federal patent law. (See *Christianson, supra*, 486 U.S. 800, 810; *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP, supra*, 183 Cal.App.4th 238, 251; *Linear Technology Corp. v. Applied Materials, Inc, supra*, 152 Cal.App.4th 115, 125–127, 130.)

Defendants further argue that one of the contractual duties alleged by Caldera to have been breached "is that of filing a 'timely' PCT application, and the analysis of what constitutes a timely application requires resort to the PCT. While the PCT application at issue is an application for foreign patent rights, the trigger for when one can be filed is governed by review of the prior U.S. patent filings. The deadline for filing a PCT application is based on when an application covering the same subject matter was first filed. [(Citing MPEP § 1842(II).)]"

But patent law is not the basis for Caldera's claim that defendants "failed to make the necessary PCT filing for patent application DOE S-102,376." It is defendants' alleged contractual failure to make the filings that is at issue, not the content of the filings Caldera alleges should have been made. That failure is unlike a bungled and uncorrected patent application that will require knowledge of patent law to fix the value of the reduced scope of the patent obtained in light of actual infringement. Because Caldera is not seeking damages for infringement, there is no need for knowledge of patent law to decide whether items were produced in violation of a patent. (See *U.S. Valves, Inc. v. Dray* (Fed.Cir. 2000) 212 F.3d 1368, 1372; *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP, supra*, 183 Cal.App.4th 238, 248, 250–251.)

Defendants' apparent belief that "resort" to the PCT would bring the matter within exclusive federal jurisdiction by reason of 28 United States Code section 1331 (quoted at fn. 10, *ante*), is misplaced. The essence of Caldera's claim is that defendants' failure to make filings violated a provision of the license agreement. Even if this requires interpretation of a treaty within the meaning of 28 United States Code section 1331 to fix those deadlines, we must accept Caldera's allegation that defendants missed it.[21] (*Gerawan Farming, Inc. v. Lyons, supra*, 24 Cal.4th 468, 515.) This too is a contractual basis for liability independent of patent law. (*Christianson, supra*, 486 U.S.

---

[21] We note that the PCT, which took effect in this country in January 1978, has 69 articles and more than 95 implementing regulations, together comprising more than 150 pages. (28 U.S.T. 7647–7718, 7813–7906, T.I.A.S. No. 8733.) Further, while it appears that the PCT may not be the only international agreement pertinent to the matter (see *Voda v. Cordis Corp.* (Fed.Cir. 2007) 476 F.3d 887, 898–899), it is the only one mentioned by the parties. We further note that defendants fail to cite to any particular article or regulation in the PCT as requiring federal court interpretation under 28 United States Code section 1331.

800, 810; *Gully, supra*, 299 U.S. 109, 114–115; *Linear Technology Corp. v. Applied Materials, Inc, supra*, 152 Cal.App.4th 115, 130.) Moreover, consulting a treaty to establish a deadline that will be used to prove a breach of contract hardly qualifies as a necessary, essential, or substantial question of patent law under section 1338(a) and *Christianson*. (*Christianson, supra*, at p. 809; *Laboratory Corp. v. Metabolite Laboratories, supra*, 599 F.3d 1277, 1284; *Speedco, Inc. v. Estes, supra*, 853 F.2d 909, 913.) At most, the likelihood of such a consultation is, at this pleading stage of the case, merely "lurking in the background." (*Gully, supra*, 299 U.S. 109, 117.)

The same is also largely applicable to defendants' argument concerning Caldera's allegation that defendants abandoned application DOE S-104,901. Quoting section 11.5 of the license agreement, defendants argue that " 'abandonment of any of the U.S. patent applications will be at the sole discretion of the University.' [Caldera] must thus show that abandoning patent applications constitutes 'termination' such that [defendants] had an obligation to disclose such information. Federal patent law defines what constitutes 'termination of prosecution.' [(Citing MPEP § 711.02(c) and 35 U.S.C. § 120.)]" Again, if federal law is pertinent, it establishes only the deadline defendants allegedly missed, which in turn has relevance only to establish another breach of defendants' contractual obligations under the license agreement, this time to notify Caldera. The crucial point is that defendants missed a deadline accepted by private consensual agreement—not whether state or federal law fixes that deadline. Again, this point does not qualify as a necessary, essential, or substantial question of patent law under section 1338(a) and *Christianson*. If defendants mean that they can establish that what they did or failed to do with respect to section 11.5 of the license agreement will not meet the definition of "[t]ermination of proceedings" set out at MPEP § 711.02(c), this would qualify as a matter of defense, and thus not to be considered because it originates outside Caldera's complaint. (*Christianson, supra*, 486 U.S. 800, 809; *Excelstor Technology, Inc. v. Papst Licensing GMBH & Co., supra*, 541 F.3d 1373, 1376; *E-Pass Technologies, Inc. v. Moses & Singer, LLP, supra*, 189 Cal.App.4th 1140, 1150; *Applera Corp. v. MP Biomedicals, LLC, supra*, 173 Cal.App.4th 769, 785.)

Granted, some of Caldera's causes of action concern actions that occurred in the patent office, specifically the abandonment and resubmission of patent applications DOE S-99,911 and DOE S-104,901. But the propriety of those actions, *with respect to federal patent law* is not placed at issue by Caldera as nothing alleged suggests that those actions were procedurally defective, improper, or misled the patent office. In fact, that institution had an entirely passive role, doing nothing beyond acting as the recipient for certain filings submitted by defendants. Any wrong attending those actions was a wrong as to Caldera alone. There is no hint in Caldera's complaint that anything done or not done by defendants constituted a fraud on the patent office that would

require federal jurisdiction. (See *In re Ciprofloxacin Hydrochloride Antitrust Litigation* (Fed.Cir. 2008) 544 F.3d 1323, 1330, fn. 8 ["the determination of fraud before the PTO necessarily involves a substantial question of patent law."].)[22] Even the allegations regarding LANS's attorneys concern only their failure to satisfy, according to the complaint, "a duty *to Caldera.*" (Italics added.) The same is true concerning defendants' alleged "failure to give Caldera notice of the decision to abandon patent applications DOE S-99,911 and S-104,901." It is the failure to give *Caldera* notice that is at issue, and that omission is solely a contractual matter among Caldera, the Regents, and LANS. (See *Bonzel v. Pfizer, Inc., supra,* 439 F.3d 1358, 1363 ["The defendants are . . . charged with breach of contract and asked to perform their contract obligations. The nature of this contract action does not change because the contract is a patent license and the assertedly failed contract obligation is the obligation to notify . . . ."].)

Granted also, as defendants further argue, "[b]oth the contract and Caldera's claim for relief use the terms 'continuations' and 'continuations-in-part,' which only have meaning with reference to the patent laws." But those meanings can be explained to a trier of fact just like any other word, phrase, or concept unfamiliar to the nonexpert. Again, this would present an issue of contract interpretation, a traditional enclave of state law (*Lear, Inc. v. Adkins, supra,* 395 U.S. 653, 661–662), with any potentially relevant issue of federal law only "lurking in the background." (*Gully, supra,* 299 U.S. 109, 117.)

Defendants assert that "a determination of whether S-109,085 was properly or wrongfully filed as a CIP requires a determination of whether application S-109,085 includes subject matter not disclosed in application S-104,901." Here again Caldera is not challenging the validity of any filing by defendants in the patent office, but seems willing to have the filings taken at face value. Applications that may or may not qualify as "continuations" and "continuations-in-part" will not be invalidated, but merely considered as one part of Caldera's claim against defendants.

Defendants next contend, somewhat quizzically, that the alleged abandon-ment of application DOE S-104,911 occurred "two months before the execu-tion of the License Agreement." But the plain import of Caldera's complaint

---

[22] There does appear to be something called "patent fraud," but the Federal Circuit gives it an extremely circumscribed scope confined to " 'a deliberately planned and carefully executed scheme to defraud . . . the Patent Office' " (*C.R. Bard, Inc. v. M3 Systems, Inc.* (Fed.Cir. 1998) 157 F.3d 1340, 1364; see *Argus Chemical Corp. v. Fibre Glass-Evercoat Co., Inc.* (Fed.Cir. 1987) 812 F.2d 1381, 1384–1385.) There is also the "inequitable conduct" defense to an infringement suit that does not require proof of deliberate scheming. (See 35 U.S.C. § 282(1); *Therasense, Inc. v. Becton, Dickinson & Co.* (Fed.Cir. 2011) 649 F.3d 1276, 1285–1289; *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.* (Fed.Cir. 1984) 747 F.2d 1553, 1559–1560.)

is that the abandonment was wrongful because the Regents did not communicate that fact to Caldera during the process of negotiating the license agreement. It is no stretch to call it a breach of fair dealing, if not fraud, for a party to a contract to purport to convey for a valuable consideration something that no longer exists, whether that something is widgets or patent applications. The same is certainly true with respect to Caldera's allegations that defendants were breaching "the exclusivity provisions of the option agreement" and the license agreement "during the period from 2004 through 2007" with third parties. Because these breaches of confidential relations stand apart from patent law (*Becher v. Contoure Laboratories, Inc., supra*, 279 U.S. 388, 391; *Bonzel v. Pfizer, Inc., supra*, 439 F.3d 1358, 1363; *University of Colorado Foundation v. American Cyanamid, supra*, 196 F.3d 1366, 1371), they can be tried in state court. (*Christianson, supra*, 486 U.S. 800, 810; *Gully, supra*, 299 U.S. 109, 114–115; *Thompson v. Microsoft Corp., supra*, 471 F.3d 1288, 1291–1292.)

Concerning the $400 million damages sought by Caldera, defendants note that Caldera "has not disclaimed a theory seeking the value of allegedly lost patent rights." This is significant, they argue, because "only by this measure of damages could [Caldera] hope to recover the huge damages" alleged, further arguing that Caldera "must still prove which investments was [*sic*] made in direct reliance on the belief it had rights to the abandoned S-104,901 application or foreign rights to the S-102,376 patent." "Thus, in proving reliance damages, [Caldera] must attribute its investment and efforts to each one of the many patent rights stemming from the four originally licensed patent applications, which have since given rise to at least three U.S. continuation applications and two issued U.S. patents. While [Caldera] has alleged that it made investments based on this entire portfolio, its claim of fraud extends only to the alleged loss of patent rights in Europe and Japan for the S-102,376, and loss of S-104,901 (a continuation of the four originally licensed applications)." Defendants consistently maintain that Caldera will be obliged to prove "that but for the Regents' and LANS' abandonment of the patent applications and/or concealment of the abandonment, Caldera would have been able to secure valuable patent rights from those applications," with the consequence that "determining the nature and extent of patent rights that might have issued necessarily involves substantial questions of patent law."

It may be that trial of Caldera's causes of action may necessitate a comparison of patent applications DOE S-99,911 and DOE S-104,901 with S-109,085, but only for the limited purpose already discussed. But there are even more fundamental reasons why defendants' arguments must prove unavailing at this time.

Caldera alleged that it incurred out-of-pocket losses due to "its expectation and belief that the international patent rights for patent application DOE

S-102,376 would be secured." Those out-of-pocket losses are not dependent upon the actual validity of that patent application, but were incurred regardless of whether actual patents were ever issued. This is a factual allegation that must be accepted as true. (*Gerawan Farming, Inc. v. Lyons, supra,* 24 Cal.4th 468, 516.)

It is not the function of a judgment on the pleadings to take account of what the plaintiff is *not* alleging, nor to examine whether all damages alleged can actually be recovered. (*Frances T. v. Village Green Owners Assn., supra,* 42 Cal.3d 490, 496, fn. 2; *Matteson v. Wagoner, supra,* 147 Cal. 739, 742.) Put another way, defendants are in effect making an attempt to demur to the prayer of Caldera's complaint, something disallowed by ancient rule. (*Althof v. Conheim* (1869) 38 Cal. 230, 234; *Rollins v. Forbes* (1858) 10 Cal. 299, 300; 4 Witkin, Cal. Procedure, *supra,* Pleading, § 495, p. 632; 5 Witkin, Cal. Procedure, *supra,* Pleading § 957, p. 372.) Defendants' argument is also defective because it relies on matters not found in Caldera's complaint, specifically, that the four patent applications identified in the license agreement have "since given rise to at least three U.S. continuation applications and two issued U.S. patents."[23] (See *Christianson, supra,* 486 U.S. 800, 809.)

Defendants have argued the pertinency of numerous reported and unreported decisions of the federal courts. It would unduly lengthen this opinion to discuss them all in depth. We mention only the most prominent.

This is not a situation where federal jurisdiction is appropriate because there is a question concerning an attorney's compliance with patent office rules and procedures (*Carter v. ALK Holdings, Inc.* (Fed.Cir. 2010) 605 F.3d 1319), or the content of a document the attorney filed with that agency. (*Touchcom, Inc. v. Bereskin & Parr* (Fed.Cir. 2009) 574 F.3d 1403; *Immunocept, LLC v. Fulbright & Jaworski, LLP* (Fed.Cir. 2007) 504 F.3d 1281; *Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP, supra,* 183 Cal.App.4th 238.) Nor are we looking at a case where the validity or sufficiency of a document filed with the patent office must be decided, and a claim of malpractice is conjoined with it. (*University of West Virginia v. VanVoorhies, supra,* 278 F.3d 1288.) Nor is it an instance where proving malpractice requires proving infringement, the first categorical of federal exclusivity. (*Warrior Sports, Inc. v. Dickinson Wright, P.L.L.C.* (Fed.Cir. 2011) 631 F.3d 1367; *Air Measurement Technologies v. Akin Gump Strauss Hauer* (Fed.Cir. 2007) 504 F.3d 1262.) Nor is inventorship, another reserved topic, involved. (*Shum v. Intel Corp.* (Fed.Cir. 2010) 629 F.3d 1360.)

---

[23] Similarly, Caldera suggested at oral argument that damages might also be provable by the amount Caldera could have received by transferring the patent applications to a sublicensee. Because this possibility was not mentioned in Caldera's complaint, we merely note it without basing any part of our decision on it.

Without these features, the Federal Circuit does not insist on federal jurisdiction pursuant to section 1338(a). (See, e.g., *HIF Bio v. Yung Shin Pharmaceuticals Industrial, supra,* 600 F.3d 1347, 1356–1357 [fraud and breach of contract claims based on "the defendants' alleged failure to keep their promises" can be established without necessarily deciding inventorship of disputed patents]; *Excelstor Technology v. Papst Licensing GMBH & Co., supra,* 541 F.3d 1373, 1376–1377 [licensee's claims for fraud and breach of contract because licensor had previously made a license agreement properly remanded to state court because "there is no federal cause of action for collecting royalties twice . . ."]; *Bonzel v. Pfizer, Inc., supra,* 439 F.3d 1358, 1363 ["The defendants are . . . charged with breach of contract and asked to perform their contract obligations. The nature of this contract action does not change because the contract is a patent license and the assertedly failed contract obligation is the obligation to notify . . ."]; *Board of Regents, University of Texas v. Nippon, supra,* 414 F.3d 1358, 1364 [validity, "construction and scope of the . . . patent are irrelevant to showing that the technology on which the [rival] patent is based was misappropriated from UT"]; *Uroplasty, Inc. v. Advanced Uroscience, Inc., supra,* 239 F.3d 1277, 1280 [Claim that defendant "used and divulged . . . trade secrets and confidential information by acts that included the preparation and filing of the [patent] application" can be proved "without requiring the resolution of a substantial issue of patent law. Because proving the same alleged acts also could support the breach of contract and fiduciary duty claims . . . , patent law is not essential to any of the claims of the well-pleaded complaint."]; *American Telephone and Telegraph v. Integrated Network* (Fed.Cir. 1992) 972 F.2d 1321, 1324 [state law fraud claim for ownership of inventions properly left in state court when not all inventions were patentable].)

Caldera's complaint does not, on its face, refute its interpretation that recovery of damages does not depend on rights lost by reason of defendants' actions. Most significantly, those actions are not attributed to defendants' attorneys in the sense that any omissions or instances of nonfeasance are claimed to subject the attorneys to liability. Although defendants labor mightily to convince us otherwise, this is not a malpractice action against the attorneys, and there is no issue of the attorneys' agency. The only liability claimed is against defendants, with no challenge made against the validity of any action or omission of the patent office. In sum, it does not appear that a substantial issue of patent law is essential to Caldera's causes of action. But even if the contrary were true, Caldera can base its right to relief, at least in part, on purely contractual grounds that stand apart from the patent laws.

(*Christianson, supra,* 486 U.S. 800, 810; *Gully, supra,* 299 U.S. 109, 114–115; *Bonzel v. Pfizer, Inc., supra,* 439 F.3d 1358, 1363; *Hunter Douglas, Inc. v. Harmonic Design, Inc., supra,* 153 F.3d 1318, 1329.)

## CONCLUSION AND DISPOSITION

The United States Supreme Court has never shown an inclination to extend federal jurisdiction over all contract actions. (E.g., *Aronson, supra,* 440 U.S. 257, 262; *Skelly Oil Co. v. Phillips Co.* (1950) 339 U.S. 667, 672 [94 L.Ed. 1194, 70 S.Ct. 876]; *Gully, supra,* 299 U.S. 109, 114–115.) Here, there is no question that the causes of action framed by Caldera in its second amended complaint assert only claims created by the law of California. This dispute is based not on federal patent law, but on the performance of the contractual relationship the parties voluntarily assumed. In the words of the Federal Circuit, the dispute is ultimately about "the defendants' alleged failure to keep their promises." (*HIF Bio v. Yung Shin Pharmaceuticals Industrial, supra,* 600 F.3d 1347, 1356.)

The language from another decision by the Federal Circuit is unusually apt: "The defendants are not charged with infringement nor asked for infringement damages; they are charged with breach of contract and asked to perform their contract obligations. The nature of this contract action does not change because the contract is a patent license and the assertedly failed contract obligation is the obligation to notify of patent infringement and share payment for infringement. These obligations do not 'arise under' the patent law, in terms of a well-pleaded complaint. Indeed, should it come to pass that the court, in deciding whether the contract conditions were met, deems it appropriate to apply the law of patent infringement, that of itself does not change the complaint into one arising under the patent law. Applying the exposition of 'arising under' in *Christianson* . . . , [the plaintiff's] right to relief for breach of contract does not 'necessarily depend[] on resolution of a substantial question of federal [patent] law,' based on the pleadings in the complaint." (*Bonzel v. Pfizer, Inc., supra,* 439 F.3d 1358, 1363.)

We hold that adjudicating this dispute in a California courtroom will not entail deciding a necessary, essential, and substantial issue of patent law. Caldera's causes of action are not founded exclusively on federal patent law, and " 'there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why [Caldera] may or may not be entitled to the relief it seeks . . . .' " (*Christianson, supra,* 486 U.S. 800, 810; see *Board of Regents, University of Texas v. Nippon, supra,* 414 F.3d 1358, 1364–1365 and decisions cited.) The complaint abounds with theories of liability that stand solely on state law. The dispute between Caldera and defendants is therefore

not one "arising under" federal patent law, as that term in section 1338(a) has been construed by the United States Supreme Court. It follows that Caldera's complaint should not have been dispatched to a federal district court.

The judgment is reversed.

Kline, P. J., and Haerle, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 8, 2012, S203122.